540 P.2d 643

Abe ROCHLIN, Louis Escalada, and City of Nogales, a Municipal Corporation, Appellants,

v.

STATE of Arizona, Larry Woodall, Carl Cansler, and James A. Petrie, the Persons Constituting the Fund Manager of the Public Safety Personnel Retirement System, Ernest Garfield, Treasurer of the State of Arizona, and Gary K. Nelson, Attorney General of the State of Arizona, Benny Ashley, Grant Bingaman, Stephen T. Zimmerman, Ronald Oberholtzer, Fraternal Order of Police, Tucson Lodge No. 1, and Fraternal Order of Police, Pima County Lodge No. 20, Appellees.

No. 11932.

Supreme Court of Arizona, In Banc.

Sept. 23, 1975.

Nasib Karam, Nogales, and Johnson, Shelley & Roberts by J. LaMar Shelley, Mesa, for appellants.

Bruce E. Babbitt, Atty. Gen. by Fred W. Stork, III, Asst. Atty. Gen., Phoenix, for the State of Ariz.

Hughes & Hughes by John C. Hughes, Phoenix, for appellees Ashley and Bingaman.

Quigley & Quigley by James E. Quigley, Tucson, for appellees Zimmerman, Oberholtzer, and Fraternal Order of Police Lodge 1 and 20.

HOLOHAN, Justice.

Plaintiffs, the City of Nogales and two of its resident taxpayers, brought this action for declaratory and injunctive relief against the State of Arizona, Fund Managers of the Public Safety Personnel Retirement System, the State Treasurer, and the Attorney General. The action questioned the constitutionality of A.R.S. § 38–841 et seq., the Public Safety Personnel Retirement System. In *Saunders v. Superior Court,* 109 Ariz. 424, 510 P.2d 740 (1973),

this Court permitted individual employees and associations of employees covered by the Retirement System to intervene as party defendants.

The facts were stipulated in the trial court, and motions for judgment were filed by the parties. The trial judge granted the defendants' motion for judgment and ordered the action dismissed with prejudice. A timely appeal was filed by the plaintiffs.

The parties agree that there are no issues of fact, and the issues to be resolved are solely matters of law.

Prior to 1968, the legislature had established separate pension systems for firemen, policemen, and highway patrolmen. Each system varied somewhat in the manner of funding and the amount of benefits. In 1968, the legislature enacted the statute in question in order to provide a uniform statewide pension system. Funding included the transfer of the monies in the .previous independent systems into a single investment agency, a continuation of employee and employer (State and political subdivisions) current contributions, and contributions by the employer sufficient in amount to pay the prescribed interest rate on what is later defined as the past service cost. The act was amended in 1971 to liberalize the pension system by providing for earlier retirement by employees without reduction in benefits.

Appellants question the constitutionality of the Public Safety Personnel Retirement System on four grounds: First, that the unfunded liability of the State and political subdivisions is a debt subject to the limitations in Article 9, Sections 5 and 8 of the Arizona Constitution; second, that the act permits the State and local governments to postpone indefinitely the payment of an annual necessary expense contrary to the provisions of Article 9, Sections 3 and 7; third, that the giving of increased benefits grants extra compensation after services were rendered in violation of Article 4, Part 2, Section 17 of the Arizona Constitution; and fourth, that the method of fund-

ing the pension system creates non-uniformity in taxation, contrary to Article 9, Section 1 of the Arizona Constitution.

The Appellants are not attacking the concept of a pension system, but they are challenging the system as created in 1968 and amended in 1971. They maintain that the several pension systems in existence before the 1968 Act required fully funded systems. The 1968 Act and its amendments created a system which would have a constantly growing "unfunded liability" because of the changes made in the retirement system providing for earlier retirement for personnel and liberalized benefits. This unfunded liability is the core of the issue of the constitutionality of the statute. Appellants maintain that it violates several provisions of the Arizona Constitution.

The term "unfunded liability" is not used in the statute. A.R.S. § 38–843(B) uses the term "past service cost," but the effect is the same so that the terms may be said to be synonymous. The term unfunded liability is best described as the difference between the amount of money *actually* paid into the retirement fund and the amount required to provide retirement benefits for employees covered by the system based upon their past service. The several changes in the former retirement systems produced a greater demand or liability on the retirement system than was originally provided for by the employer-employee contributions. This liability is unfunded, but the statutes require that each political unit pay into the retirement fund an amount representing the interest on the amount of the unfunded liability for that political unit.

Appellants contend that the unfunded liability in the system for all political entities amounted to over thirty million dollars on July 1, 1972. While Appellees do not contest the figures of Appellants, they contend that the fund is sound even though partially funded because government is continuous and there will always be a steady supply of persons entering the system, some staying, some leaving, and such

a government retirement system, even though partially funded, is actuarially sound if the contributions to the system each year are sufficient to cover normal cost plus interest on the unfunded liability. *Dombrowski v. City of Philadelphia,* 431 Pa. 199, 245 A.2d 238 (1968).

■ The arguments between Appellants and Appellees on the fiscal soundness of the retirement system are legislative considerations. This Court is not empowered to decide the wisdom, necessity, propriety or expediency of legislation. The Constitution of Arizona has placed such matters within the exclusive province of the legislature. *Industrial Development Authority v. Nelson,* 109 Ariz. 368, 509 P.2d 705 (1973). This Court is charged by the Arizona Constitution with the duty of determining whether legislation is in conformity with that document.

■ To overcome the presumption in favor of the constitutionality of a legislative enactment, Appellants have the burden of establishing beyond a reasonable doubt that the act violates some provision of the Constitution. *New Times, Inc. v. Arizona Board of Regents,* 110 Ariz. 367, 519 P.2d 169 (1974).

I.

Appellants contend that the unfunded liability of the State and political subdivisions under the Retirement System is a "debt" under Article 9, Sections 5 and 8 of the Arizona Constitution, and the unfunded liability exceeds the debt limitations of those sections. This is a question of first impression in Arizona.

Section 5 of Article 9 reads in part:

"The State may contract debts to supply the casual deficits or failures in revenues, or to meet expenses not otherwise provided for; but the aggregate amount of such debts, direct and contingent, whether contracted by virtue of one or more laws, or at different periods of time, shall never exceed the sum of three hundred and fifty thousand dollars; and

the money arising from the creation of such debts shall be applied to the purpose for which it was obtained or to repay the debts so contracted, and to no other purpose."

Section 8 of Article 9 reads as follows:

"No county, city, town, school district, or other municipal corporation shall for any purpose become indebted in any manner to an amount exceeding four per centum of the taxable property in such county, city, town, school district, or other municipal corporation, without the assent of a majority of the property tax-payers, * * * voting at an election provided by law to be held for that purpose, * * * under no circumstances shall any county or school district become indebted to an amount exceeding ten per centum of such taxable property, * * * that any incorporated city or town, with such assent, may be allowed to become indebted to a larger amount, but not exceeding fifteen per centum additional, for supplying such city or town with water, artificial light, or sewers, when the works for supplying such water, light, or sewers are or shall be owned and controlled by the municipality."

What became Section 5 of Article 9 of the Arizona Constitution was taken "from Ohio and several other states." Journal of the Constitutional Convention November 19, 1910, p. 22. Section 5 is identical to Article 8, Section 1 of the Ohio Constitution and Article 7, Section 2 of the Iowa Constitution. It is nearly identical to Section 49 of the Kentucky Constitution and Article 8, Section 1 of the Washington Constitution. Section 8 of Article 9 also was patterned after similar provisions in other state constitutions.

These limitations upon state and local debt were adopted as a reaction to the irre-sponsible borrowing by state governments in the 1830s and an equally reckless borrowing splurge indulged in by cities in the first few years after the Civil War.*

Appellants argue that these sections of the state constitution should be interpreted to prevent the State and its political subdivision from becoming involved in the kind of pension system created by the 1968 act as amended. It is their contention that the same evil is present whether the transaction is called "debt" or "unfunded liability." The question presented is whether an unfunded liability is a debt in the constitutional sense.

■ "Debt" as commonly understood includes every obligation by which one person is bound to pay money to another, but when used in the constitutional sense it is given a meaning much less comprehensive. *Hubbell v. Herring*, 216 Iowa 728, 249 N. W. 430 (1933). A debt in the constitutional sense arises when the State or a political subdivision borrows money. This obligation created by the loan of money is usually evidenced by a bond, but can be created by the issuance of paper bearing a different label. *State ex rel. Wittler v. Yelle*, 65 Wash.2d 660, 399 P.2d 319 (1965).

■ Under Section 5 of Article 9, a debt can be either direct or contingent. A direct debt occurs when the State borrows money, pledging its credit as the sole source of payment. A contingent or secondary debt occurs when the governmental unit guarantees payment of revenue bonds, pledging its credit in the event that the revenues derived from the funded project prove inadequate to meet the bond obligations. *Alan v. County of Wayne*, 388 Mich. 210, 200 N.W.2d 628 (1972).

Appellants contend that the term "debt" has a broader meaning than simply borrowed money. They argue that this Court has so held in *City of Phoenix v. Phoenix*

---

* For a fuller discussion of this topic, see: Gray, Limitations of Taxing Power, Including Limitation Upon Public Indebtedness, Bancroft-Whitney, 1906; and W. J. Shultz, "Lim-itations of State and Local Borrowing Powers," The Annals of the American Academy of Political and Social Science, vol. 181, pp. 118–125, 1935.

**176**

*Civic Auditorium and Convention Center Association,* 99 Ariz. 270, 408 P.2d 818 (1965) and *American-La France and Foamite Corporation v. City of Phoenix,* 47 Ariz. 133, 54 P.2d 258 (1936). The cited cases do not apply to state debt. Both cases deal with the question of debt of political subdivisions of the state, and neither of the cases is applicable to Article 9, Section 5.

There are significant differences in the language of Sections 5 and 8 of Article 9. Section 5 speaks in terms of "contracting debts to supply the casual deficits or failures in revenues, or to meet expenses not otherwise provided for." Section 8 provides that political subdivisions shall not "become indebted in any manner." In *City of Phoenix v. Phoenix Civic Auditorium and Convention Center Association, supra,* this Court held that Section 8 included not only borrowed money but also any pecuniary obligation created by contract or by express agreement. This holding construed the intent of the broad language of Section 8.

▮ Due to the difference in the language between Sections 5 and 8, the cases construing Section 8 are not authority for the construction of Section 5. This difference in language must be respected. If the authors of the constitution had intended the sections to mean the same thing they could have used the same or similar language. The fact that they did not, requires the conclusion that the sections were meant to be different. We believe that Section 5 was meant to apply to borrowing money for the operation of state government.

▮ In the instance of the retirement system the State has not borrowed any money. Any liability which has arisen is not due to borrowing funds; hence it is not "debt" in the sense of Section 5, Article 9 of the constitution.

In the instance of political subdivisions of the state the debt limitation is stated differently than that for the state. Section 8, Article 9 limits the amount which such units "shall for any purpose become indebted in any manner." Despite this broad language the courts have limited the meaning in several instances. Obligations of political subdivisions which are payable from a special fund and not from the general revenue have been held not to be debts within the meaning of the constitutional limitation. *Guthrie v. City of Mesa,* 47 Ariz. 336, 56 P.2d 655 (1936); *Industrial Development Authority v. Nelson, supra.* Obligations which have not been voluntarily incurred but which have been imposed by state law have been held not to be debts in the constitutional sense. *Columbia County v. Board of Trustees,* 17 Wis.2d 310, 116 N.W.2d 142 (1962).

In *Columbia County,* the Wisconsin Supreme Court held that a retirement system similar to that in issue did not violate the Wisconsin debt limitation provisions for counties because the obligation was not voluntarily incurred by the county. While the Wisconsin Constitution (Sec. 3 Art. 11) uses the phrase "incurring any indebtedness" in the debt limitation provision, it is sufficiently similar to our Section 8, Article 9 to be considered persuasive. As was pointed out by this Court almost fifty years ago in speaking of this same constitutional provision:

> "Provisions similar in character, though differing in language, are found in almost all state Constitutions, and their purpose is always the same, to limit the amount of indebtedness which a municipality might otherwise incur through the acts of a corrupt or ignorant governing body, or the negligence and lack of farsightedness of the taxpayers themselves. But, as no two Constitutions have exactly the same language, the specific interpretation will depend upon the general principles of reason applied to the particular proviso." *Buntman v. City of Phoenix,* 32 Ariz. 18, 21, 255 P. 490, 491 (1927).

▮ We believe that the object of Section 8, Article 9 of our constitution was

meant to apply to acts of the political subdivision in voluntarily becoming indebted, and it does not apply to obligations created and mandated by the state. As thus construed the constitutional section does not prohibit the manner of funding the pension system which the state has required of its political subdivisions.

## II.

Appellants' second contention is that the unfunded liability is either a necessary ordinary expense which the statute permits the State and political subdivisions to postpone indefinitely, contrary to Article 9, Section 3 of the Arizona Constitution or it constitutes a gift by the State and local government which is forbidden by Article 9, Section 7 of the State Constitution.

The part of Section 3 of Article 9 which is pertinent to this issue reads as follows:

"The Legislature shall provide by law for an annual tax sufficient, with other sources of revenue, to defray the necessary ordinary expenses of the State for each fiscal year. . . ."

Appellants argue that the expenses of operating the Highway Patrol including compensation of the employees, are part of the ordinary necessary expenses of the State and that the amount of the pension being earned by each member, including the unfunded liability, is also part of the ordinary necessary expenses of the State which must be provided for annually.

Appellants concede that the pension provisions have been held not to be gifts but a part of the contemplated compensation for employee services. *Yeazell v. Copins,* 98 Ariz. 109, 402 P.2d 541 (1965). Since the pension is not a gift appellants maintain that the full cost of the pension, like the salary, must be paid annually.

This position overlooks the basic fact that employees do not receive, nor is anything due, from the pension system until the employee has qualified and actually retired. Only upon retirement do the benefit payments become a current expense of the State. The expenses of the State governed by Section 3 of Article 9 are those which are required to be paid out during the fiscal year for the operation of government. The so-called "unfunded liability" amount is not part of the necessary ordinary expenses of the State. It is by its very nature a future cost not a current one.

## III.

Appellants' third contention is that the liberalization of benefits and the reduction in the years of service required to qualify for benefits constitutes the granting of extra compensation after services were rendered, in violation of Article 4, Part 2, Section 17 of the Arizona Constitution. We reject that contention.

The pertinent portion of that section reads as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into, . . ."

The nature of a pension was discussed in *Yeazell v. Copins, supra.* This Court held that a pension is not a gratuity but deferred compensation for services rendered. To qualify for the pension, the public employee must perform the condition precedent of service for the required period of years. The nature of a pension under Arizona statutes does not provide extra compensation for services already rendered.

The issue presented by appellants was considered in *Gubler v. Utah State Teachers' Retirement Board,* 113 Utah 188, 192 P.2d 580 (1948). Utah has a constitutional provision similar to the above quoted Arizona provision. The Utah Supreme Court held constitutional a 1945 amendment to the Teachers Retirement Act which allows teachers to have credit for services performed prior to 1937 which provision would result in increased pension benefits

for those teachers who qualified. The Court stated:

"Prior service credit may have a tendency to increase the payments made to the teacher during the time he or she teaches, between the passage of the act and the time of retirement, but this does not contravene the constitutional provision. It may be considered in the nature of an inducement to have experienced teachers remain part of the public school system. If so construed, the act is still valid." 113 Utah at 196, 192 P.2d at 584.

A pension even though based on past service is not intended to be compensation for past services. It is an inducement to experienced personnel to remain in service for continued performance. A promise of pension looks to the future and depends upon continued performance of service. *Wright v. Craig*, 202 App.Div. 684, 195 N.Y.S. 391 (1922); *State v. Levitan*, 181 Wis. 326, 193 N.W. 499 (1923); *Dombrowski v. City of Philadelphia, supra.*

The 1971 amendment to the act allowed earlier retirement than that formerly provided, and it is argued that, as to those who took advantage of early retirement, the retirement benefits were a payment for past services because it was certainly not an inducement for their continued service. With respect to such employees the payment was not for past services. The act had a dual purpose: to induce younger experienced officers to remain in service and to induce older officers to retire to provide opportunity for replacement by younger personnel. Either purpose is constitutional and not payment for past service.

### IV.

■ Appellants' final contention is that the method of funding the pension system creates non-uniformity in taxation, contrary to Article 9, Section 1 of the Arizona Constitution. We hold that it does not.

The pertinent portion of that section reads as follows:

"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

■ Appellants argue that when the Legislature requires an expenditure for a primary function of the State, then the above constitutional provision requires that the ad valorem property tax rate to fund the expenditure must be uniform throughout the State, and unless it is, the act is unconstitutional. This contention was rejected in substance by *Shofstall v. Hollins*, 110 Ariz. 88, 515 P.2d 590 (1973), which dealt with taxation for education. The state mandates certain standards in both education and pension provisions for law enforcement officers, but in neither case does this require a uniform statewide tax rate to carry out the mandated provisions.

Nothing in *Luhrs v. City of Phoenix*, 52 Ariz. 438, 83 P.2d 283 (1938) aids appellant on this point. The Luhrs case did nothing more than uphold the right of the state to legislate in the field of police pensions as a matter of statewide concern. The municipalities are still required to pay from their revenues the amount of the salaries of their police officers and the amount of their contribution to the pension system. Local government has full control over the salary and number of public safety personnel hired by such government.

It is also pertinent to point out that the contributions to the pension system by the municipalities and counties need not necessarily come from the ad valorem tax revenue. Nothing in the statute requires that any particular source of revenue be used.

Having fully considered the issues presented by appellants we hold that the Public Safety Personnel Retirement System is constitutional, and the judgment of the superior court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., LORNA E. LOCKWOOD, J., and LEVI RAY HAIRE, C. J., concur.

Note: Justice JACK D. H. HAYS and Justice FRANK X. GORDON, Jr. did not participate in the determination of this matter; retired Justice LORNA E. LOCK-WOOD and Chief Judge LEVI RAY HAIRE, Court of Appeals, Division One, sat in their stead.