**VILLAGE OF CHEFORNAK, Appellant,**

v.

**HOOPER BAY CONSTRUCTION COMPANY, an Alaskan Corporation, Appellee.**

No. S–2221.

Supreme Court of Alaska.

July 8, 1988.

---

David S. Case, Anchorage, for appellant.

David E. Kohfield, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Chefornak, a municipal corporation, contracted with Hooper Bay Construction Company for the removal of boulders from the river channels used by Chefornak residents.[1] For reasons that are not apparent from the record, a dispute developed between the parties, and, on October 22, 1984, Hooper Bay filed suit for breach of the contract. In its answer, the city denied any breach and alleged that the project was incomplete.

Dale Curda, Chefornak's attorney at the time, deposed several witnesses and subsequently advised the city to settle the lawsuit. The city contends that at a regular city council meeting on August 18, 1985, the city council decided against settling.

Four days later, on August 22, 1985, Mr. Curda flew to Chefornak specifically to discuss the prospect of settlement with the

---

1. Funds for the rock removal project had been appropriated to the city by the 1982 Alaska legislature. In 1985, one-half of the original amount was reappropriated to a neighboring city.

city council. What happened at the August 22 meeting is hotly disputed. Mr. Curda contends that he carefully explained the potential ramifications of settlement, that all discussions were translated into Yupik for the non-English speaking attendees, that he explained that the sole purpose of the meeting was to discuss settlement, that those present advised him to settle, and that he left with no doubt in his mind that settlement was authorized. On the other hand, the city contends, via several affidavits of those present at the meeting, that the council members never agreed with Mr. Curda that the case should be settled. The city points out that, as Yupik-speaking people, they did not understand the exact purpose of the meeting. For example, one affiant stated that he does "not know what the word 'judgment' means."

A month after this meeting, Mr. Curda signed a stipulation for entry of judgment against the city for $78,000 upon the terms to which he believed the city had agreed. A superior court judge entered final judgment in accordance with the stipulation. Mr. Curda states that he subsequently mailed copies of the final judgment and stipulation to Chefornak, and he began working to procure a state grant to help Chefornak pay the judgment. He was in close contact with the city, and advised it to submit a grant request. Nonetheless, the city did not do so. Chefornak did, however, give a check for $8,500, dated October 3, 1985, to Hooper Bay, and wrote on the check stub "payment for stipulated judgment between Hooper Bay Construction Co. and the Village of Chefornak."

When Chefornak failed to make any further payments in accordance with the judgment, Hooper Bay's successor-in-interest to the judgment[2] filed a "Motion for Relief in the Nature of Mandamus," seeking to compel payment. In response, the city argued that the judgment could not be enforced because it violates the Alaska Constitution's municipal debt restriction. Chefornak also moved to set aside the judgment (1) under Civil Rule 60(b)(4), on the basis that violation of the constitutional debt limit renders the judgment void; (2) under Rule 60(b)(6), for "any other reason," based on a "complete lack of understanding and knowledge" of the judgment entered and the terms thereof; and (3) under Rule 60(b), for fraud on the court, based on the contention that Mr. Curda's actions distorted the judicial process. The superior court granted Hooper Bay's motion and denied Chefornak's motion to set aside the judgment. Chefornak appeals. We affirm the trial court's decision.

### A. The Constitutional Debt Limitation

 Article IX, section 9 of the Alaska Constitution provides:

> No debt shall be contracted by any political subdivision of the State, unless authorized for capital improvements by its governing body and ratified by a majority vote of those qualified to vote and voting on the question.

Chefornak contends that, by entering into a settlement in the suit by Hooper Bay, the city obligated itself to pay $78,000, and thus "contracted a debt" in violation of this provision. It claims that to enforce the judgment would violate public policy. In addition, the city claims that the judgment is void and, under Civil Rule 60(b)(4),[3] unenforceable. Hooper Bay, on the other hand, contends that article IX, section 9 applies only to debt financing and the incurring of bonded indebtedness, and is, therefore,

---

**2.** Several months earlier, Hooper Bay had assigned the $78,000 judgment to the law firm of Cummings and Routh, as security for unrelated legal services. Hooper Bay subsequently defaulted on that agreement, and the assignment of the judgment became absolute. Thus, Cummings and Routh filed the motion as assignees of Hooper Bay's interest. For clarity, the appellee will be referred to as Hooper Bay throughout this opinion.

**3.** Civil Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons:
>
> ....
>
> (4) the judgment is void[.]

inapplicable in the present context.

The question thus presented is whether a judgment entered upon a settlement stipulation is a "debt ... contracted" in the constitutional sense. Although we have never before interpreted this phrase, we note that every previous Alaska case involving section 9 has concerned bonding issues. *See, e.g., North Slope Borough v. Sohio Petroleum*, 585 P.2d 534 (Alaska 1978) (question of tax levy on borough's debt service on general obligation bonds); *Wright v. City of Palmer*, 468 P.2d 326 (Alaska 1970) (question of whether bonds issued to encourage industrial development were valid); *City of Juneau v. Hixson*, 373 P.2d 743 (Alaska 1962) (question whether city's issuance of bonds was for a "capital improvement"). Likewise, every Alaska case involving the parallel constitutional provision applicable to state debts has concerned bonding issues.[4] *See, e.g., Thomas v. Rosen*, 569 P.2d 793 (Alaska 1977) (question whether governor may exercise item veto as to general obligation bond issue).

In order to ascertain what the framers meant by "debt ... contracted," it is useful to look at the minutes of the Alaska Constitutional Convention, which show clearly that Article IX, section 9 was intended to refer to a municipality's right to *borrow money*. For example, after the reading of proposed article IX, one delegate stated that "section 9 and 10 ... seem[ ] to be a limitation on the right of the state to borrow money." 2 Proceedings of the Alaska Constitutional Convention 1112 (December 19, 1955). Likewise, other delegates referred to sections 8 and 9[5] as "the one[s] on the matter of bonded indebtedness," "a necessary safeguard against excessive

bonding," and the "basic rules [for state and local governments] before they can bond." 3 *id.* at 2317, 2337, 2342 (January 16, 1956). Indeed, one version of section 9, adopted by the delegates prior to a subsequent stylistic change, provided that no debt would be contracted unless a "majority of the qualified voters of the respective political subdivisions *approve the bond issue.*" *See* 4 *id.* at 2423 (January 17, 1956) (emphasis added). Thus, we think it clear that the framers of our constitution intended section 9 to restrict a municipality's ability to voluntarily borrow funds or issue bonds. We find no evidence of an intent to insulate cities from valid judgments.

The Arizona Supreme Court interpreted the term "debt," as used in that state's constitution, to apply only to borrowed funds. In determining that the state's retirement system was constitutional, although it created an unfunded liability, the court found the constitutional debt limitation inapplicable. It noted that "debt," as commonly understood, includes every obligation to pay money, but that the term is much less comprehensive when used in the constitutional sense. *Rochlin v. State*, 112 Ariz. 171, 540 P.2d 643, 647 (1975). The court explained:

> A debt in the constitutional sense arises when the State or a political subdivision borrows money. This obligation created by the loan of money is usually evidenced by a bond, but can be created by the issuance of paper bearing a different label.

*Id.* Similarly, the Supreme Court of Washington held that a constitutional limitation on the state's ability to "contract debts," Wash.Const. art. VIII, §§ 1–3, is inapplicable except in situations involving borrowed

---

**4.** Article IX, section 8 of the Alaska Constitution provides in part:

> No state debt shall be contracted unless authorized by law for capital improvements or unless authorized by law for housing loans for veterans, and ratified by a majority of the qualified voters of the State who vote on the question.

> This section also provides for certain exceptions, such as debt contracted to repel invasion, suppress insurrection, and defend the state in war.

**5.** Originally, section 8 provided debt restrictions for both the state and its political subdivisions. This section was subsequently divided into two separate provisions; section 8 concerns state debts, and section 9 concerns political subdivision debts. 4 Proceedings of the Alaska Constitutional Convention 2421 (January 17, 1956). Thus, statements about section 8 often refer to what ultimately became section 9.

money. *State ex rel. Wittler v. Yelle*, 65 Wash.2d 660, 399 P.2d 319, 324 (1965). The court stated:

> This court has many times said what Article 8 means by the word "debt." We think that it means borrowed money; it denotes an obligation created by the loan of money, usually evidenced by bonds but possibly created by the issuance of paper bearing a different label.

*Id.* The court also noted that all the Washington cases which had arisen thus far under the constitutional provision in question had concerned borrowed money and the issuance of bonds. *Id.* 399 P.2d at 325.[6]

We now adopt an interpretation of article IX, section 9 which comports with the foregoing authorities, and with what we perceive to have been the clear intent of the section's drafters. We conclude that the restrictions on contracting debt contained in article IX, section 9 are applicable only where a political subdivision has endeavored to borrow money, via the issuance of bonds or other paper indebtedness. Since the judgment entered against Chefornak involved no such borrowing, the city's motion for relief from judgment based on the constitutional debt restrictions was properly denied.

### B. *Availability of Relief for "Any Other Reason"*

Civil Rule 60(b) provides in part:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons:
>
> (1) mistake, inadvertence, surprise or excusable neglect;
>
> ....

(6) any other reason justifying relief from the operation of the judgment.

The rule further provides that a motion under 60(b)(1) must be brought within one year of the date of notice of judgment, but a motion under 60(b)(6) "shall be made within a reasonable time." Alaska R.Civ.P. 60(b).

Chefornak did not bring its 60(b) motion within one year, and therefore it cannot obtain relief on the basis of mistake or excusable neglect.[7] The city argues, however, that the combination of language and cultural barriers, the city council's lack of understanding of the judicial process, and the misinformation or lack of information provided to the council combine to make up "any other reason justifying relief."

■ In *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981), we stated that "[c]lause (6) is reserved for extraordinary circumstances not covered by the preceeding clauses." In addition, we have made clear that "clause (6) and the first five clauses of Rule 60(b) are mutually exclusive. Relief under clause (6) is not available unless the other clauses are inapplicable." *Farrell v. Dome Laboratories*, 650 P.2d 380, 385 (Alaska 1982) (footnote omitted). Thus, Chefornak is entitled to 60(b)(6) relief only if the circumstances are "extraordinary;" it cannot rely on Rule 60(b)(6) in order to circumvent the time limit if the circumstances actually amount to a 60(b)(1) claim.

■ Chefornak's allegations that its officers do not speak English and therefore did not understand or become aware of the judgment against the city are not "extraordinary," nor do they amount to a claim for something more than a mistake or excusable neglect under Rule 60(b)(1). The city's

---

**6.** Other jurisdictions have also interpreted constitutional debt limitations as inapplicable in situations similar to that in the case at bar. *See DeKalb County v. Georgia Paperstock*, 226 Ga. 369, 174 S.E.2d 884, 886–87 (1970) (damages imposed on county for breach of contract are not an indebtedness within the meaning of the Georgia constitution); *Thomas O'Connor & Co. v. City of Medford*, 16 Mass.App.Ct. 10, 448 N.E. 2d 1276, 1278–79 (1983) (statutory prohibition upon municipality incurring a liability relates to municipal finance, and will not shield the city

from liability for contract breach); *City of Houston v. United Compost Services*, 477 S.W.2d 349, 356 (Tex.Civ.App.1972) (constitutional debt restriction does not apply to obligation imposed by law for breach of contract).

**7.** At the hearing on the 60(b) motion, counsel for Chefornak told Judge Fraties "[i]f [the city] had done it, filed a motion before this court a month or so earlier ..., we would be arguing that this was just excusable neglect."

allegations of miscommunication are, if anything, a misunderstanding intended to be covered by Civil Rule 60(b)(1). Thus, Chefornak is not entitled to relief under Civil Rule 60(b)(6). *See Stone v. Stone,* 647 P.2d 582, 586 (Alaska 1982) (motion which could have been brought under other provision of Rule 60(b) was barred when brought under Rule 60(b)(6) because more than one year had passed).

Chefornak also argues that Mr. Curda's actions amounted to a fraud on the court, thus entitling them to relief under Civil Rule 60(b).[8] Chefornak admits that there is no evidence that Mr. Curda had any actual intent to defraud the court. Nonetheless, it claims that Mr. Curda's conduct, in failing to secure the city's knowing consent and failing to adequately explain the consequences of the judgment, amounts to fraud.

█ To constitute fraud on the court under Rule 60(b), conduct must be so egregious that it involves a corruption of the judicial process. *See Stone,* 647 P.2d at 586 n. 7; *Allen v. Bussell,* 558 P.2d 496, 500 (Alaska 1976). We have also said that fraud may be found even in the absence of intent to defraud. *Mallonee v. Grow,* 502 P.2d 432, 438 (Alaska 1972). Here, however, Chefornak's allegations simply fall short of any "behavior which defiles the court itself." *Id.* Mr. Curda made extensive efforts to explain everything to the city council members, and, as Judge Fraties wrote in his opinion, "[i]t is difficult to surmise what more could have been done."

## CONCLUSION

The judgment entered against Chefornak on the basis of the signed stipulation does not violate article IX, section 9 of the Alaska Constitution. The judgment is not a "debt ... contracted" as that term is used in our constitution. Thus, the judgment may not be set aside on the ground that it was void. Second, the judgment should not be set aside for "any other reason," or because it results from "fraud upon the

**8.** Civil Rule 60(b) specifically provides that it "does not limit the power of a court to ... set

court;" the circumstances here are not extraordinary or egregious. We affirm.

aside a judgment for fraud on the court."