PERSEUS OF N.E., MA, INC. *vs.* COMMONWEALTH & another.[1]

Middlesex. January 7, 1999. - March 5, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*County,* Contract. *Medicaid. Contract,* Performance and breach, Indemnity, Commonwealth. *Commonwealth,* Contracts. *Practice, Civil,* Summary judgment.

General Laws c. 35, §§ 32 and 34, is not applicable to shield a county from liability for its breach of contract in failing to pay or indemnify, as it had promised, Medicaid liabilities incurred by a county hospital before its sale to a third party. [165-167]

CIVIL ACTION commenced in the Superior Court Department on December 13, 1996.

The case was heard by *Hiller B. Zobel,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Janet Steckel Lundberg (Richard M. Bluestein* with her) for the plaintiff.

*Deborah I. Ecker,* Assistant Attorney General, for the Commonwealth.

ABRAMS, J. On December 31, 1996, Middlesex County (county) sold Middlesex County Hospital (hospital) to Perseus of N.E., MA, Inc. (Perseus), for $3.9 million. After the sale, the Division of Medical Assistance (division) demanded payment from Perseus for Medicaid overpayments made to the hospital for services rendered during the county's ownership. The issue is whether the county must indemnify Perseus for that liability.

[1]As successor to Middlesex County. See St. 1997, c. 48. This case originally was part of a consolidated action brought by creditors of Middlesex County to collect debts owed by the county. Perseus is the only remaining plaintiff. The Commonwealth and the treasurer of Middlesex County are the only remaining defendants. The office of treasurer expires December 31, 2002. See St. 1997, c. 48, § 3.

A Superior Court judge granted summary judgment in favor of the Commonwealth, as successor to the county. We allowed Perseus's application for direct appellate review. We reverse.

Prior to the sale, the county operated the hospital as a Medicaid provider under a contract with the division. As a Medicaid provider, the county was subject to retroactive rate changes and to recoupment of overpayments by the division for services previously provided by the hospital. For Perseus to be a qualified Medicaid provider on its purchase of the hospital, it was required by statute to assume joint and several liability to the division for any Medicaid liability of the hospital, including obligations attributable to Medicaid services provided while the county owned the hospital.[2] The county remained jointly and severally liable to the division for any Medicaid overpayments it received prior to the sale.

The terms of the sale were governed by a written agreement, several provisions of which are the subject of this dispute. The county promised that it would "be responsible for the payment of all accounts payable accruing prior to the time of closing and retain all other liabilities that shall have arisen from the operation of the property by [the county] prior to the time of closing." The agreement also contained an indemnification clause. The county agreed "[f]or an unlimited amount of time with respect to Medicaid successor liability . . . to indemnify [Perseus] . . . from any and all claims, liabilities, damages, and penalties and any and all loss, cost . . . or expense incurred by [Perseus] incident to, resulting from, or in any way arising out of, the ownership or operation of the Hospital by [the county] prior to the time of closing, or from any breach of any of the representations, warranties or agreements, contained in this agreement . . . ."

---

[2]General Laws c. 118E, § 36, provides in pertinent part: "Participation in the medical assistance programs established under this chapter shall be limited to providers of services . . . who: . . . (5) participation in the programs as a skilled nursing or acute or non-acute hospital shall be limited to providers who: agree to be responsible for all overpayments owed to the division, including, in the case of transfer of ownership, the overpayments of any and all previous owners." This means that "[a]ny successor licensed owner of a nursing facility, acute hospital, or nonacute hospital shall be liable for the obligation of any prior licensed owner to pay the full amount of any monies owned by the prior licensed owner . . . ." 130 Code Mass. Regs. § 450.260(D). "All obligations of providers, owners of providers, providers under common ownership, and successor licensed owners of providers . . . are joint and several." 130 Code Mass. Regs. § 450.260(I).

At some point, Perseus became concerned about the county's precarious financial status. As a result, the parties executed an amendment to the purchase and sale agreement. The amendment provides that "[p]aragraph 4 [entitled "Purchase Price"] of the Agreement is hereby amended to reduce the purchase price by $100,000 to reflect the cost to [Perseus] of Medicaid successor liability. This amount equals the outstanding Medicaid balance owed by [the county] . . . , estimated to be $1,000,000, less any agreement [the county] is able to reach, to [Perseus's] satisfaction, with the [the division], to offset this balance with Medicaid receivables as of the Time of Closing."

After the sale was completed, Perseus learned that the county's outstanding liability to the division was greater than the anticipated $100,000 net shortfall. See note 7, *supra*. The net liability was in fact nearly $1.8 million. The division demanded this amount from Perseus. Perseus paid a portion of the debt owed to the division and continues to make payments. Perseus brought this action seeking indemnification.

On June 30, 1997, Middlesex County was abolished. The Commonwealth assumed the obligations of the county. St. 1997, c. 48. The Commonwealth moved to dismiss Perseus's complaint. The motion was converted to a summary judgment motion. A Superior Court judge granted summary judgment in favor of the Commonwealth, reasoning that "the [c]ounty could not — without legislative approval, appropriative or otherwise — commit public funds to cover an unliquidated undeterminate [*sic*] future obligation."

The Commonwealth points to the statutory underpinnings of the judge's decision. General Laws c. 35, § 32, provides in part: "No county expenditures shall be made or liability incurred, nor shall a bill be paid for any purpose, in excess of the appropriation therefor . . . ." Section 34 of that chapter states in part: "No new or unusual expense shall be incurred, or permanent contract made, or salary increased, until an appropriation sufficient therefor has been made by the advisory board on county expenditures . . . ." The Commonwealth argues that these statutes required the county commissioners who entered into the agreement to seek an appropriation for the expenditure contemplated by the indemnification provision. Because they did not, the Commonwealth urges that the commissioners lacked statutory authority to obligate the county, and the provision is

void as a matter of law.[3] We disagree.

The statutes do not apply. The purpose of the statutes was to keep county finances in check, not to shield the county from liability for its wrongful actions. See *County Comm'rs of Middlesex County* v. *Superior Court*, 371 Mass. 456, 460 (1976); *Thomas O'Connor & Co.* v. *Medford*, 16 Mass. App. Ct. 10, 13 (1983). This case concerns breach of contract. The county promised to pay the Medicaid liability incurred by the hospital. It did not pay. As a result, Perseus was left as the sole source for reimbursement to the division. Perseus was also left with a breach of contract claim against the county. No prior appropriation for the indemnity sought by Perseus was required. Indeed, the commissioners could not have received an appropriation even if one had been sought. Absent a breach, the county was not required to pay anything to Perseus. Perseus was the buyer in this transaction, not the county.

We were faced with a similar situation in *Reynolds Bros.* v. *Norwood*, 414 Mass. 295 (1993). Reynolds provided construction services to the town of Norwood. *Id.* at 296. The town was obligated by statute to pay interest on late payments for work substantially completed. *Id.* at 298. It refused to do so, citing G. L. c. 44, § 31, a provision applicable to municipalities paralleling G. L. c. 35, § 32.[4] We construed G. L. c. 44, § 31, to require the interest payments. Noting a distinction between claims under a contract and damages for breach of that contract, we said that a contractor may not recover for work not contemplated by a contract, but it can recover for damages suffered as a result of the municipality's breach of contract. *Id.* *Worcester* v. *Granger Bros.*, 19 Mass. App. Ct. 379, 388 (1985) ("We have interpreted [G. L. c. 44, § 31,] to prohibit an arbitration award which exceeds the appropriation *unless* the municipality has committed a breach of contract" [emphasis in original]). *Thomas O'Connor & Co.*, *supra* at 13 ("[S]ome claims do fall outside of the contract, and because of the

---

[3]The Commonwealth also argued below that the indemnification provision violates art. 62, § 1, of the Amendments to the Massachusetts Constitution. Because the Commonwealth does not press this argument on appeal, we do not address it.

[4]General Laws c. 44, § 31, provides in part: "No department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department . . . ."

municipality's conduct constitute a 'true breach' "). See *County Comm'rs of Hampshire* v. *County Comm'rs of Hampden*, 397 Mass. 131, 134 (1986) (payment on judgments against county permitted by G. L. c. 35, § 32, even absent prior appropriation, because otherwise obligated by law); *County Comm'rs of Middlesex County*, *supra* (county required to pay retroactive salary increases for court stenographers notwithstanding G. L. c. 35, §§ 32, 34, because otherwise obligated by law). We reach the same result here.[5]

When the case is viewed in terms of a breach of contract, it becomes clear that the agreement's indemnity provision encompasses Perseus's remedy at common law. Even absent the indemnification provision, Perseus would have a breach of contract claim against the county for its failure to pay the Medicaid liability it incurred. The proper remedy for Perseus's claim would be indemnification, a fact not altered by the indemnification clause.[6]

The Commonwealth asserts an alternative argument that, even if the indemnification clause does not violate G. L. c. 35, §§ 32 and 34, it was amended out of the contract. It argues that the amendment to the purchase and sale agreement decreased the purchase price of the hospital by $100,000 in exchange for

[5]Decisions from other jurisdictions bolster our conclusion. For example, in *DeKalb County* v. *Georgia Paperstock Co.*, 226 Ga. 369 (1970), the plaintiff sued the county for breach of a contract by which the county was to sell waste boxes to the plaintiff. *Id.* at 369-370. The court ruled that the complaint was not subject to dismissal as violative of a State constitutional debt restriction. In reasoning that echoes our own, the court stated that the obligation the plaintiff sought to impose "arises, not by reason of the obligations of the contract, but by the reason of its alleged breach. The contract itself, if performed by both the parties, would never result in the county incurring an obligation to pay to the plaintiff any sum whatsoever, but on the contrary would give rise to an obligation on the part of the plaintiff to pay the county money." *Id.* at 371. See *Chefornak* v. *Hooper Bay Constr. Co.*, 758 P.2d 1266, 1269 (Alaska 1988) (constitutional debt restriction limits municipality's ability to borrow funds or issue bonds, but not to pay judgment); *Denton Constr. Co.* v. *Missouri State Highway Comm'n*, 454 S.W.2d 44, 53-54 (Mo. 1970) (constitutional debt restriction refers to obligation imposed by contract, not one imposed by law for breach of valid contract); *Houston* v. *United Compost Servs., Inc.*, 477 S.W.2d 349, 356 (Tex. Ct. App. 1972) (same).

[6]The Commonwealth argues that there was no breach of contract aside from the indemnity clause because the county was not obligated to pay the division. This argument is misplaced. Although G. L. c. 118E, § 36, imposes successor liability on Perseus, that liability is joint and several. 130 Code Mass. Regs. § 450.260(I).

Perseus's promise to pay the entire Medicaid liability owed to the division, regardless of when that liability was incurred. A party may defend a judgment on any ground based on the record so long as raising the argument is not unfair to its opponent. See *New England Tel. & Tel. Co.* v. *Gourdeau Constr. Co.*, 419 Mass. 658, 662 n.5 (1995) ("An appellee may generally argue any issue, fairly open on the record, that supports the decision below"); *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 (1977) (same). See also *Helena Rubenstein, Inc.* v. *Bau*, 433 F.2d 1021, 1023 (9th Cir. 1970) (summary judgment may be affirmed on any ground that appears in the record).

The issue was not raised below in a manner that was fair to Perseus nor are the facts alleged by the Commonwealth supported by the record. The Commonwealth did not set forth its argument regarding the amendment in any of its trial court submissions. It also did not raise the issue during the first hearing before the judge. The record does not reflect the intention of the parties in executing the amendment.[7] After the judge converted the motion to dismiss to a motion for summary judgment, the Commonwealth did not supplement its submissions with affidavits relating to the amendment.[8]

Left as we are with only the breach of contract issue, we conclude that there was no issue of material fact and Perseus was entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974) (summary judgment may be rendered against a moving party). The Commonwealth does not dispute that neither it nor the county has reimbursed the division. The agreement is valid. We vacate the summary judgment for the Commonwealth and remand the case to the Superior Court for entry of summary judgment for Perseus.

*So ordered.*

---

[7]Perseus submitted affidavits of its president and vice-president as well as the chief operating officer of the hospital. All three state that the adjustment to the purchase price was intended to reflect the currently known Medicaid liabilities of the hospital and not to alter the county's obligation to pay any other Medicaid liability.

[8]The Commonwealth complains that it was not given an opportunity to file additional materials in response to Perseus's submission. This claim is not supported by the record. The record reflects that the Commonwealth had two months between Perseus's submission and the final argument on summary judgment. On this record, there is no request for or denial of additional time to file further affidavits.