BOLICK, J., concurring.
 

 ¶26 I join the Court's well-stated core holding that "the driver's choice to lead the officers to a specific location for the stop constitutes the driver's implied consent to the officer's presence at that location."
 
 Supra
 
 ¶ 17. I write separately to emphasize that the Court's decision stops right there.
 

 ¶27 The Court properly recognizes that Hernandez had a reasonable expectation of privacy in the curtilage to the home.
 
 Supra
 
 ¶¶ 12, 15. In his dissent below, Judge Staring correctly concluded that, absent exigent circumstances, a warrant ordinarily is required for police intrusion even in an unenclosed driveway, and certainly in a backyard.
 
 Hernandez
 
 , 242 Ariz. at 577 ¶¶ 32-33, 581 ¶ 49,
 
 399 P.3d 115
 
 , 124, 128 (Staring, J., dissenting) (citing,
 
 inter alia
 
 ,
 
 Jardines
 
 ,
 
 569 U.S. at 7-10
 
 ,
 
 133 S.Ct. 1409
 
 and
 
 State v. Olm
 
 ,
 
 223 Ariz. 429
 
 , 433 ¶ 11, 434 ¶ 17,
 
 224 P.3d 245
 
 , 249, 250 (App. 2010) ). But here, the officers properly initiated a stop on a public street, and by law Hernandez was obliged to comply.
 
 Supra
 
 ¶ 17. Hernandez chose to do so in his girlfriend's driveway, thereby impliedly authorizing the limited police presence there. To hold otherwise would exempt from lawful police stops anyone who turns into a driveway where that person resides or is a guest. This is not a game of tag, where touching home-base shields the pursued.
 

 ¶28 The implied-consent holding here provides a narrower and far more solid basis for police presence on private property than the hot-pursuit exigency relied on by the court of appeals.
 
 Hernandez
 
 , 242 Ariz. at 572-76 ¶¶ 11-27,
 
 399 P.3d at 119-23
 
 . The hot pursuit exigency requires "immediate or continuous pursuit of the [defendant] from the scene of a crime."
 
 Welsh v. Wisconsin
 
 ,
 
 466 U.S. 740
 
 , 753,
 
 104 S.Ct. 2091
 
 ,
 
 80 L.Ed.2d 732
 
 (1984).
 
 Welsh
 
 emphasized "that an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made."
 

 Id.
 

 The pursuit here, which involved a minor civil infraction, and in which an arrest could not have even been initially contemplated, hardly qualifies as hot pursuit, for the reasons ably stated in Judge Staring's dissent.
 
 Hernandez
 
 , 242 Ariz. at 577-81 ¶¶ 34-49,
 
 399 P.3d at 124-28
 
 (Staring, J., dissenting).
 

 ¶29 Finally, I agree that Hernandez has not demonstrated "that the scope of the Arizona Constitution's protections exceeds the Fourth Amendment's reach under the circumstances of this case."
 
 Supra
 
 ¶ 23. The language of Arizona Constitution article 2, section 8 is starkly different from the language of the Fourth Amendment.
 
 Compare
 
 Ariz. Const. art. II, § 8 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."),
 
 with
 
 U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."). It is axiomatic, as a matter of constitutional or statutory interpretation, that where different language is used in different provisions, we must infer that a different meaning was intended.
 
 Rochlin v. State
 
 ,
 
 112 Ariz. 171
 
 , 176,
 
 540 P.2d 643
 
 , 648 (1975) (comparing sections of the Arizona Constitution with other state constitutions, the Court concluded that any "difference in language must be respected. If the authors of the constitution had intended the sections to mean the same thing they could have used the same or similar language. The fact that they did not, requires the conclusion that the sections were meant to be different.");
 
 see also
 

 Ault
 
 , 150 Ariz. at 466, 724 P.2d at 552 ("While our constitutional provisions were generally intended to incorporate federal protections, they are specific in preserving the sanctity of homes and in creating a right
 of privacy." (citation omitted)). As a former chief justice of this Court has aptly observed, our Constitution's "framers had the opportunity to ponder more than 100 years of United States history before penning their own constitution, allowing them to adopt or adjust provisions employed by the federal government or other states to meet Arizona's needs." Rebecca White Berch et al.,
 
 Celebrating the Centennial: A Century of Arizona Supreme Court Constitutional Interpretation
 
 ,
 
 44 Ariz. St. L.J. 461
 
 , 468 (2012). "Had the framers merely intended to mirror the guarantees found in the Federal Bill of Rights, they could have simply adopted the first eight amendments of the U.S. Constitution."
 

 Id.
 

 at 469
 
 .
 

 ¶30 The Court correctly observes that it has interpreted article 2, section 8 's second provision, pertaining to sanctity of the home, significantly more broadly than the United States Supreme Court has interpreted the Fourth Amendment.
 
 Supra
 
 ¶ 23;
 
 see, e.g.
 
 ,
 
 Ault
 
 , 150 Ariz. at 466, 724 P.2d at 552 (deciding "on independent state grounds" not to apply the federal inevitable discovery doctrine, because "exceptions to the warrant requirement are narrow and we choose not to expand them");
 
 Bolt
 
 ,
 
 142 Ariz. at 265
 
 ,
 
 689 P.2d at 524
 
 (holding that police entries into a home to secure them pending warrant "are 'per se unlawful' under our state constitution," a holding "based upon ... its specific wording, and our own cases, independent of federal authority"). It is also true, as the Court observes, that the Court has not extended article 2, section 8 beyond the Fourth Amendment outside of the context of the home.
 
 Supra
 
 ¶ 23. But the Court has never expressly held, based on considered analysis, that article 2, section 8 's first provision, protecting a person's "private affairs" against warrantless government intrusion, is coextensive with the United States Supreme Court's interpretation of Fourth Amendment protections. Given that we have recognized that the second provision provides greater protection than the Fourth Amendment, it would be odd to construe the first provision more narrowly, in lockstep with the Supreme Court's ever-evolving Fourth Amendment jurisprudence.
 
 See
 

 State v. Jean
 
 ,
 
 243 Ariz. 331
 
 , 353-54 ¶¶ 92-96,
 
 407 P.3d 524
 
 , 546-47 (2018) (Bolick, J., concurring in part and dissenting in part),
 
 petition for cert. docketed
 
 , No. 17-8419 (U.S. Apr. 6, 2018).
 

 ¶31 Although Hernandez raised state constitutional arguments, he did not argue persuasively why we should interpret article 2, section 8 to require a different result under the circumstances here. Such arguments could properly encompass the constitutional text's plain meaning, its context in our Declaration of Rights, its history and purpose, and analysis of similar provisions in other state constitutions. I agree with my colleagues that it is not obviously apparent that article 2, section 8 proscribes the police conduct here. But further consideration of this provision's scope must await future cases.