Steven W. Albahari & others[1] vs. Zoning Board of
Appeals of Brewster & another.[2]

No. 08-P-1515.

Suffolk. April 7, 2009. - February 8, 2010.

Present: Duffly, Brown, & McHugh, JJ.

*Practice, Civil,* Summary judgment. *Municipal Corporations,* By-laws and
ordinances. *Zoning,* By-law, Building permit, Notice, Judicial review.

In an action brought in Land Court by plaintiffs contesting a local zoning
board's issuance of a permit to the defendant, a neighboring landowner
seeking to build a single-family house on two contiguous parcels of land,
the judge did not err in granting summary judgment in favor of the plaintiffs,
where, by the time the permit was issued, the town zoning by-law had
changed in a way that made it impossible for the defendant to build in ac-
cordance with the plans attached to her application, and the defendant, due
to deficiencies in the plans, had not been unconditionally entitled to a
permit at any time before the first publication of the notice of the proposed
by-law change. [248-252] Brown, J., dissenting.

Civil action commenced in the Land Court Department on
June 19, 2006.

The case was heard by *Gordon H. Piper,* J., on motions for
summary judgment.

*Walter H. McLaughlin* for Lucille M. Owocki.

*Peter S. Farber* for the plaintiffs.

McHugh, J. Defendant Lucille Owocki owns two contiguous
parcels of land in Brewster (town). On August 29, 2000, she
filed an application for a permit to build a single-family house
on the land. The town building commissioner (commissioner)
initially denied the application, but following litigation described
below, ultimately issued the permit on September 22, 2005. By

---

[1]Janet L. Albahari, William H. Barber, Judith S. Barber, Paul Apostol, Jr.,
Lisa A. Apostol, Dean H. Foster, and Bonnie Jane Foster.

[2]Lucille M. Owocki.

then, however, the town zoning by-law (by-law) had changed in a way that made it impossible for Owocki to build in accordance with the plans attached to her application. Neighbors appealed issuance of the permit to the town's zoning board of appeals (board), which upheld the permit. The neighbors then appealed to the Land Court, which, on cross-motions for summary judgment, reversed. Owocki now appeals, and we affirm.

*Background.* The summary judgment record reveals the following undisputed facts. On August 29, 2000, Owocki applied for a permit to build a single-family home on her two lots on Doran Drive in Brewster. In a letter dated September 29, 2000, the commissioner denied the application, citing five deficiencies that made the application "incomplete." First and foremost, the commissioner stated that the nature of some of the soil on Owocki's lots placed at least portions of those lots in a wetlands conservancy district, with the consequence that art. II, § 179-6(B), of the by-law prohibited building on them. The four other reasons were (1) a lack of septic permits, (2) a failure to furnish driveway permits, (3) a failure to furnish workers' compensation affidavits, and (4) issues with Owocki's foundation plans. The commissioner noted that "the specifics mention[ed] . . . regarding the actual structures can be readily and quickly satisfied. However, the zoning/soil situation is a completely separate issue that must be addressed by the Zoning Board of Appeals."

Owocki appealed to the board from the commissioner's decision that her lots contained soil placing them in a wetlands conservancy district and requested a variance if the board agreed with the commissioner. At a February, 2001, hearing before the board, she offered evidence that her lots contained "Amostown" soil, a soil type the by-law did not list as a conservancy soil. The board, in a decision filed with the town clerk on February 23, 2001, voted unanimously to overturn the commissioner, noting that, by the time of the hearing, a soil expert and the commissioner agreed that no conservancy soils existed in areas of proposed construction on either of Owocki's lots.

On March 15, 2001, Steven W. Albahari and other abutters appealed the board's decision to the Superior Court pursuant to G. L. c. 40A, § 17. An agreed statement of facts submitted with cross motions for summary judgment stated that the lots had

Amostown soil and, at the time of the board hearing, the by-law did not list Amostown as a conservancy soil. In a joint pretrial memorandum, however, the abutters stated that they expected to show that although the by-law did not list Amostown soil as a conservation soil, it did list "Ninigret" soil, which they claimed was, "for all intents and purposes the soil today known as 'Amostown.' "

On September 28, 2001, while the case was awaiting resolution in the Superior Court, the town published notice of a proposal to amend the by-law by adding Amostown soil to the by-law's list of conservancy soils. The amendment was adopted and became effective on November 19, 2001.[3] Consequently, in a subsequent stipulation, the parties framed the issue for Superior Court resolution as "whether the zoning by-law in effect when the board of appeals rendered its decision (in February, 2001), or the zoning by-law amendment adopted in November, 2001, should control."

After hearing, a judge of the Superior Court concluded that the by-law in effect at the time of the board's decision was controlling and affirmed the board's decision. On the abutters ensuing appeal to this court, we affirmed in an unpublished memorandum and order on the ground that the only issue properly before the Superior Court was whether the board's decision was correct under the by-law "as it existed at the time the board considered the matter." *Albahari* v. *Zoning Bd. of Appeals of Brewster*, 61 Mass. App. Ct. 1104 (2004). In affirming the decision, however, we expressly declined to decide which version of the by-law would govern actual issuance of the permit, saying that the record was "not sufficient" to allow us to do so. *Id.* at n.7.

In September, 2005, after further appellate review was denied, see *Albahari* v. *Board of Appeals of Brewster*, 442 Mass. 1103 (2004), and our rescript issued, the commissioner granted Owocki the permit for which she had applied nearly five years earlier. Again, the abutters appealed to the board, but this time the board upheld the commissioner, finding that, although his

[3]The abutters claimed that when the by-law was enacted in 1974, the term Amostown did not exist in the soil taxonomy nomenclature and that the soil now called Amostown shares predominantly all the characteristics of "Ninigret" soil, which the unamended by-law did list. They claimed the 2001 amendment brought the nomenclature up to date.

letter denying the building permit cited four deficiencies in Owocki's application in addition to the issue involving the soil, Owocki had satisfied two of the deficiencies before first publication of notice of the proposed by-law change, and the other two involved routine, ministerial details that were easily corrected. Accordingly, the board concluded that "the building permit should [have] been deemed to have been issued [before first publication of the notice] and . . . the decision of the Building Commissioner should be upheld because the subsequent amendment to the Bylaw would not apply to the permit."

Once more the abutters appealed pursuant to G. L. c. 40A, § 17, this time to the Land Court. There, the parties filed cross motions for summary judgment. A judge of that court granted the abutters' motion and denied Owocki's, essentially because the judge disagreed with the board's conclusion that the two unsatisfied deficiencies in the application could be remedied with routine, ministerial corrections. Judgment entered annulling the board's decision and ordering it to rescind the permit. Owocki appeals, claiming the judge should have deemed that her permit issued before first publication of notice regarding the amended by-law and, therefore, was not subject to the amendment that added Amostown soil to the by-law's list of conservancy soils.

*Discussion.* At the outset, two components of our standard of review are worth noting. First, because the Land Court judge decided the case on cross motions for summary judgment, we give no deference to his decision. Instead, "[f]rom the same record as the motion judge, the reviewing court examines the allowance of summary judgment de novo." *Poon* v. *Massachusetts Inst. of Technology,* 74 Mass. App. Ct. 185, 194 (2009).

Second, although the judge who reviews a zoning board decision pursuant to G. L. c. 40A, § 17, typically finds the facts de novo, see, e.g., *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 295 (1972), a judge who decides the case on motions for summary judgment engages in no fact finding at all. Instead, the judge looks at the record to determine whether there is any genuine issue of material fact and, if not, whether the evidence, viewed in the light most favorable to the nonmoving party,[4] shows that the moving party is entitled to judgment

---

[4]In a case like this one where both parties have moved for summary judgment, the evidence is viewed in the light most favorable to the party against

as a matter of law. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002); *Barrasso* v. *Hillview W. Condominium Trust*, 74 Mass. App. Ct. 135, 137 (2009).

Consideration of the moving party's entitlement to judgment as a matter of law, of course, implicates the substantive law. Here, the primary source of the substantive law is G. L. c. 40A, § 6, inserted by St. 1975, c. 808, § 3, which provides that a zoning by-law "shall not apply to . . . a building . . . permit issued before the first publication of notice of the public hearing on such . . . by-law . . . , but shall apply . . . to a building . . . permit issued after the first notice of said public hearing."

The permit in this case did not actually issue before the first publication of notice of a hearing on the proposed by-law change. Were that all there were to it, Owocki would not be entitled to the permit she now seeks, for she acquired no rights simply by filing the permit application. See, e.g., *Spector* v. *Building Inspector of Milton*, 250 Mass. 63, 71 (1924) ("The fact that the petitioner filed his application for a permit before the zoning by-law was enacted is no reason why the by-law should not be held applicable to him from and after it became operative"); *Caputo* v. *Board of Appeals of Somerville*, 330 Mass. 107, 111 (1953).

But that is not all there is to it. We suggested as much when the case was here earlier, saying then that the record was not sufficient for us

"to determine, even if we had jurisdiction to do so in this review under G. L. c. 40A, § 17, whether the permit in question should be deemed to have been 'issued' for the purpose of G. L. c. 40A, § 6 (see *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 297 [1981], in which the Supreme Judicial Court held that once an applicant demonstrates its entitlement to a building permit, 'the issuance of [the] permit is a matter of duty, not discretion, and relief in the form of an order that a permit issue is appropriate'), or whether the circumstances are such as to have created in defendant Owocki a 'vested' right to the permit. Contrast *Collura* v. *Arlington*,

whom judgment is to enter. *Imprimis Investors, LLC* v. *KPMG Peat Marwick LLP*, 69 Mass. App. Ct. 218, 222 (2007).

367 Mass. 881, 888 (1975); *National Amusements, Inc.* v. *Commissioner of the Inspectional Servs. Dept. of Boston,* 26 Mass. App. Ct. 80, 86 (1988)."

*Albahari* v. *Board of Appeals of Brewster,* 61 Mass. App. Ct. 1104 at n.7.

In *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham, supra,* the Supreme Judicial Court affirmed a summary judgment entered in the Superior Court requiring the Framingham building inspector to issue the building permit the plaintiffs had sought and the inspector had denied. In doing so, the court said that

> "[a] holding that a board of appeals erred in its interpreta-tion of a zoning by-law or ordinance, standing alone, will not ordinarily suffice to support an order that a permit issue. . . . The burden is on the applicant to demonstrate in the Superior Court an entitlement to a building permit. . . . Upon such a showing, the issuance of a permit is a matter of duty, not discretion, and relief in the form of an order that a permit issue is appropriate."

*Ibid.* The court then observed that

> "the pleadings, coupled with the affidavits and exhibits sub-mitted with the plaintiffs' motion for summary judgment, were sufficient to demonstrate that the Clinic's entitlement to a building permit turned solely on a correct interpretation of the by-law."

*Ibid.* Applying those principles, the court then concluded that a judgment requiring issuance of the permit was appropriate because the building inspector had denied the application solely because of his incorrect interpretation of the by-law. A correct interpretation of the by-law, in the court's view, unquestionably entitled the applicants to the permit they sought.

Although the *Framingham Clinic* case did not involve a by-law change, the case is relevant because it stands for the proposi-tion that the right to a permit vests at the time the applicant is unconditionally entitled to its issuance. Until that time, as is shown by the two other cases we cited in the text quoted from our earlier memorandum and order, the applicant is subject to

any changes in zoning provisions that are properly noticed before the permit issues.

The question, then, is not whether Owocki's permit issued before publication of the first notice of a hearing on the proposed by-law, but whether Owocki was unconditionally entitled to a permit at any time before the first notice, for if she was, then issuance became a duty and created rights she could enforce. On this record, we think the answer to that dispositive question is "no," even if the notion of "unconditional entitlement" ignores failure to obtain the ministerial stamps, seals, and approvals that a permit applicant may have for the asking.

As noted earlier, the commissioner originally denied Owocki's permit application for four reasons in addition to the nature of the soil, i.e., (1) a lack of septic permits, (2) a failure to furnish driveway permits, (3) a failure to furnish workers' compensation affidavits, and (4) issues with Owocki's foundation plans. When Owocki filed her application, the nature of the soil was no barrier to issuance of a permit and the commissioner's contrary view was simply an error of law. Septic permits issued and the workers' compensation affidavit was filed before first publication of the proposed zoning change. Although the driveway permit was not issued until 2005,[5] it is undisputed that a landowner was entitled to a driveway permit upon filing a plan with the town's department of public works. We assume, therefore, that failure to comply with that condition can be ignored, because compliance required only routine, ministerial action on the part of town officials.[6]

Left, however, were issues about the foundation plans. The

[5]The board's decision states that the permit was issued on "September 25, 2006," but the decision was filed with the town clerk on June 1, 2006, and the decision states that the permit itself issued on "September 22, 2005." September 25, 2006, therefore, cannot be the date on which the driveway permit issued.

[6]Additionally, both the decision of the board and the decision of the Land Court judge discuss Owocki's failure to pay the full permit fee before first publication of notice. The record, though, indicates that payment of the fee is not required at any set time, although the applicant must pay it before he or she actually receives the permit, and nothing in the record suggests that Owocki would have been unable to pay the fee on demand. Under those circumstances, we think that the time when Owocki actually paid the fee is a minor detail that is irrelevant to determining when her "unconditional right" to the building permit arose.

commissioner's denial letter of September 29, 2000, stated that the plans Owocki filed with her application

> "indicate 10 [inch] walls w/o footings — will need engineers verification of soil bearing capacity of soil. No indication of sill anchoring. Insufficient windows in basement area (780 CMR 3608.6.8)."[7]

Although the commissioner's letter stated that the problem with the plans could be "readily and quickly" corrected, and although the board found that the required changes were "minor in nature," neither correction of the plans nor the process of review designed to insure that the corrections eliminated the deficiencies the inspector had identified were of the routine, nondiscretionary character that characterizes a ministerial function. See generally *Morris* v. *Commonwealth*, 412 Mass. 861, 865 (1992) (ministerial functions are those "which involve[] no exercise of discretion or judgment"). In determining when Owocki became unconditionally entitled to issuance of a permit, the date on which acceptable foundation plans were filed must be taken into account.

On this record, no acceptable foundation plans were filed until sometime in 2005, long after the first publication of the notice of the proposed zoning change and long after the revised zoning ordinance in fact became effective. Until those plans were filed, Owocki had no unconditional right to a permit and, therefore, had no vested right in a permit conforming to the pre-amendment zoning requirements. Consequently, her application was subject to the requirements of the amended zoning by-law, and the Land Court judgment annulling the board's decision was correct.

*Judgment affirmed.*

BROWN, J. (dissenting). I think the decision of the zoning board of appeals of Brewster (board) was correct, and the Land Court judge erred in annulling its decision. A review of the entire case demonstrates Owocki's entitlement to a permit.

---

[7]Neither party has cited "780 CMR 3608.6.8," quoted from its text, or otherwise referred to it. Our own research has revealed no such section.

From the outset of this case, the town building commissioner (commissioner) took the position that the deficiencies related to the structures "can be readily and quickly" satisfied. In appealing from the September 29, 2000, denial of the original application, the only issue before the board, the Superior Court, and this court revolved around the soil type. See *Albahari* v. *Board of Appeals of Brewster*, 61 Mass. App. Ct. 1104 (2004). There is no suggestion that the commissioner or the board rested on the deficiencies in the foundation plans, alone, to deny the building permit. Indeed, as the majority notes, even in this appeal, neither party has provided us with the pertinent provision of the Code of Massachusetts Regulations on which the commissioner relied in concluding there were deficiencies. The board concluded that notwithstanding the noted deficiencies, a building permit should have issued before the first publication of the notice. In these circumstances, I do not believe it was for this court to substitute its judgment for "the board's evaluation of the seriousness of the problem." *Titcomb* v. *Board of Appeals of Sandwich*, 64 Mass. App. Ct. 725, 732 (2005), quoting from *Copley* v. *Board of Appeals of Canton*, 1 Mass. App. Ct. 821 (1973).

I am of opinion that the right to a permit vested at the time the commissioner improperly denied Owocki's application. It is not difficult to discern that this is merely another example of delay and obstruction.