OUTDOOR MEIDA PROPERTIES, INC. vs. PAWLISHECK, MISC 20-000166

































 
 OUTDOOR MEDIA PROPERTIES, INC., Plaintiff, v. SUSAN PAWLISHECK, LINDA TREMBLAY, KEVIN HENDERSON, DEREK DEPETRILLO, PAUL DESCOTEAUX, DREW DANA, and JOHN SCHILLIZZI, in their capacities as members of the TOWN OF SALISBURY ZONING BOARD OF APPEALS, SCOTT VANDEWALLE, in his capacity as the TOWN OF SALISBURY BUILDING INSPECTOR AND ZONING ENFORCEMENT OFFICER, and the TOWN OF SALISBURY, Defendants
 MISC 20-000166 
 APRIL 29, 2021
ESSEX, ss.
ROBERTS, J.
MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ENTERING SUMMARY JUDGMENT FOR DEFENDANTS














 INTRODUCTION 





 Plaintiff Outdoor Media Properties, Inc. ("OMP") commenced this action on April 9, 2020 with the filing of a complaint challenging the decision of the defendant town of Salisbury's ("the Town") zoning board of appeals ("the ZBA") to uphold the decision of defendant Scott Vandewalle, the Town's building inspector and zoning enforcement officer ("the Building Inspector"), to deny two applications for the construction of a two-sided freestanding electronic billboard ("the Project") at 109 Rabbit Road, Salisbury ("109 Rabbit Road"), one pursuant to the State Building Code ("the Building Code Application") and the other pursuant to the Town's Sign Bylaw, Chapter 214 of the Town's bylaws ("SBL" and "the SBL Application") (collectively, the Building Code Application and the SBL Application are referred to herein as "the Applications"). In its complaint, OMP sought review pursuant to G. L. c. 40A, § 17, of the denial of the Applications (Count I), a determination pursuant to G. L. c. 240, § 14A, of the validity of the SBL and the Town's zoning bylaw ("ZBL") as applied to OMP's proposed construction of the Project (Count II), and a declaration pursuant to G. L. c. 231A regarding ten issues between the parties bearing on whether the Building Inspector properly denied the Applications (Count III). 





 At an initial case management conference on June 9, 2020, the parties reported their intent to promptly file cross-motions for summary judgment, being of the view that no discovery was required. As a result, a briefing schedule was established and a hearing scheduled for October 6, 2020. Instead of cross-motions for summary judgment, OMP filed a motion for partial summary judgment on July 21, 2020 ("the Motion") and the municipal defendants filed an opposition thereto but no cross-motion of their own. 





 At the October 6, 2020 hearing, the court raised several issues of both fact and law that resulted in some discovery regarding the Town's past practices with respect to other applications for sign permits and some further legal research. Supplemental briefs were filed by both sides and further hearings were held on February 10 and February 17, 2021. Thereafter, further supplemental briefs were filed by both sides. For the reasons stated on the record on February 17, 2021 and further elaborated below, Plaintiff's Motion For Partial Summary Judgment is DENIED and summary judgment will enter instead for defendants pursuant to Mass. R. Civ. P. 56 (c).





UNDISPUTED FACTS [Note 1] 





 The following facts established in the record and pertinent to the Motion are undisputed or are deemed admitted. 





The Parties 

 1. OMP is a Massachusetts corporation, is the lessee of 109 Rabbit Road, and was the applicant in the Applications at issue here. Motion at II. Undisputed Facts ("UF") ¶ 1. 





 2. The Town is an incorporated town located in Essex County. UF ¶ 2. 





 3. The ZBA is the permit granting authority in the Town and has five members and two associate members, all of whom serving during times material hereto are named as defendants herein. See UF ¶ 3. 





 4. The Building Inspector held his office within the Town at all times material hereto. UF ¶ 4. 





The Property 





 5. 109 Rabbit Road is a 13.62 acre parcel fronting on Rabbit Road in the Town and abutting Interstate Highway 95 northbound at its rear. UF ¶ 5. 





 6. 109 Rabbit Road is located partially in the Commercial II (C-2) zoning district and partially in the Limited Industrial (L-I) district as described in Sections 300-6 and 300-7 of the ZBL, Appendix ("App.") Ex. 2, and the Town Zoning Map, App. Ex. 3. UF ¶ 6. 





Relevant ZBL Provisions 





 7. Prior to May 2019, the ZBL contained the following definitions relevant to the regulation of signs: [Note 2] 





 SIGN 





 Any permanent or temporary structure, device, letter, word, model, banner, pennant, insignia, trade flag, or representation used as, or which is in the nature of, an advertisement, announcement or direction. 





 SIGN, OSCILLATING OR FLASHING 





 Any permanent or temporary structure which is in the nature of an advertisement, announcement, or direction and which is designed to attract the eye by intermittent or repeated motion or illumination. [Amended 10- 23-2006 ATM by Art. 5] 





 STRUCTURE 





 A combination of materials assembled for occupancy or use, such as a building, bridge, trestle, tower, framework, retaining wall, tank, tunnel, tent, stadium reviewing stand, platform, shelters, piers, wharves, bin, fence, sign, or the like. 





 8. Signs are not identified in the ZBL's table of uses as primary or accessory uses/structures regulated thereby. UF ¶ 10; App. Ex. 2 (ZBL 300 Attachment 1). 





 9. The ZBL does not permit use variances. 





Relevant SBL Provisions 





 10. The SBL was enacted in May 1996 as a general bylaw passed under the Town's Home Rule powers and without compliance with the requirements imposed on the enactment of zoning bylaws under G. L. c. 40A. UF ¶ 12; App. Ex. 4. 





 11. Section 214-1 of the SBL provides that: 





 The purpose of this bylaw is to regulate, restrict and place such limitations on the size, location, type, illumination and other characteristics of signs to assure that they will be appropriate to the land, building or use to which they are appurtenant; be uniform within zoning districts; be protective of property values and the safety of the public; and serve the informational purposes for which signs are intended while not detracting from the aesthetic qualities and characteristics of the Town of Salisbury. Terms used in this bylaw that are not defined herein shall have the meanings given in the Salisbury Zoning Bylaw. 





 12. Pursuant to Section 214-2 of the SBL, "[n]o sign shall be erected, altered or relocated without a permit issued by the Building Inspector, except as otherwise permitted herein." UF ¶ 14; App. Ex. 4. 





 13. The SBL contains regulations regarding the dimensions, construction, content, location and number of signs that may be permitted. UF ¶ 15. 





 14. Pursuant to Section 214-12(A) of the SBL, "[a]ny person aggrieved by his or her inability to obtain or retain a sign permit may file for a special permit in writing within 30 days of such decision to the Zoning Board of Appeals." UF ¶ 16; App. Ex. 4.





 15. Pursuant to Section 214-12(B) of the SBL, an applicant requesting "the relaxation of these bylaws and the issuance of a special permit" must prove five things: (1) "[t]here is a hardship of the condition of the land or preexisting building location which necessitates the granting of the special permit[;] (2) [t]he granting of the special permit will not have a negative effect on the surrounding property values[;] (3) [s]ign scale is appropriate in relation to development scale, viewer distance and travel speed and sign sizes on adjacent properties[;] (4) [s]ign materials, colors, lettering style and form are compatible with building design and use[;] [and] (5) [t]he issuance of the special permit is not contrary to the purpose of this bylaw." UF ¶ 19; App. Ex. 4. 





OMP's Special Permit Applications Pursuant To The SBL 





 16. In 2016, OMP applied to the ZBA for a special permit to authorize construction of the Project as then located at 109 Rabbit Road. UF ¶ 22; App. Ex. 5. 





 17. At the September 13, 2016 public hearing with respect to OMP's application, the Chair of the ZBA announced the hearing as follows: "To act on a petition for relief-- a Special Permit--with respect to the Salisbury Zoning Bylaw, Section 300 [and] M.G.L. Chapter 40A. ... [OMP is] seeking a Special Permit under Section 214-12 of the Salisbury Zoning Bylaws [sic] regarding the allowance of a free-standing billboard." UF ¶ 23; App. Ex. 5. 





 18. Following public comments and a discussion on the application, the ZBA voted 4-1 to approve the application. UF ¶ 24; App. Ex. 5. 





 19. The ZBA made none of the findings set forth in Section 214-12(B) of the SBL. App. Ex. 5. 





 20. After the ZBA's vote, the Chair of the ZBA explained the procedural steps to be followed and concluded by stating that "once the decision is filed [in the Essex County (South) Registry of Deeds ("the Registry")], you must present proof of [such] filing with the Building Inspector's office. At that time, you will be issued your building permit pursuant to 780 CMR - the Mass. State Building Code." UF ¶ 25; App. Ex. 5. 





 21. The ZBA's decision memorializing its vote to approve this application was issued on September 19, 2016 ("the 2016 Special Permit"), provides for "the allowance of a free standing billboard," and notes that this relief was granted by a supermajority vote of 4-1. UF ¶ 26; App. Ex. 6. 





 22. The 2016 Special Permit further states that it was issued by the ZBA "[b]y virtue of its authority under M.G.L. Ch. 40A and the Salisbury Zoning Bylaw." UF ¶ 27; App. Ex. 6.





 23. The 2016 Special Permit additionally provides that "[a]ppeals of this decision shall be made in accordance with the M.G.L. Ch. 40A, § 17 and shall be filed within twenty (20) days of the date of filing of this decision in the Office of the Salisbury Town Clerk." UF ¶ 28; App. Ex. 6. 





 24. The 2016 Special Permit additionally provides that: 





 By law, this decision shall not take effect until a copy of such notice has been certified by the Town Clerk that; [sic] Twenty (20) days has elapsed since the decision was filed and no appeal has been filed. 





 The Petitioner shall present and record the certified decision at the Essex Registry of Deeds in Salem MA. The cost of the recording shall be borne by the Petitioner. A registered copy must then be presented to the Building Inspector in order to apply for an appropriate permit. 





 This Decision will lapse if Substantial use of the Petitioned Relief is not made within two (2) years for a Special Permit and one (1) year for a Variance. 





 UF ¶ 28; App. Ex. 6. 





 25. The 2016 Special Permit was filed with the Salisbury Town Clerk ("Town Clerk") on September 19, 2016. UF ¶ 29; App. Ex. 6. 





 26. On October 11, 2016, the Town Clerk certified that no appeal of the 2016 Special Permit had been filed. UF ¶ 30; App. Ex. 6. 





 27. The 2016 Special Permit was recorded in the Registry on October 12, 2016 at Book 35345, Page 501. UF ¶ 31; App. Ex. 6. 





 28. In 2018, OMP appeared before the ZBA again to request a new special permit for the Project, which would now be relocated on the lot at 106 Rabbit Road to an area 200 feet north of the location approved in the 2016 Special Permit and which would specifically be a double-sided electronic billboard. UF ¶ 34; App. Ex. 7. 





 29. At the February 27, 2018 public hearing on this request, the Chair of the ZBA announced the hearing as follows: "[t]o act on a petition for relief--a Special Permit--with respect to the Salisbury Zoning Bylaws, Section 300 and M.G.L. Chapter 40A. At 109 Rabbit Road, Map 18, Lot 3. Applicant: Outdoor Media Properties is seeking a Special Permit under Section 300-214-8(E) of the Salisbury Zoning Bylaws [sic] regarding the relocation and modification of a free-standing static billboard to a double-sided digital billboard." App. Ex. 7. 





 30. After discussion, the ZBA voted 5-0 to approve the application. UF ¶ 35; App. Ex. 7.





 31. After the vote, and as was the case with respect to the hearing on the 2016 Special Permit, the Chair of the ZBA explained the procedural steps to follow and concluded by stating that "once the decision is filed [in the Registry], you must present proof of the filing to the building inspector's office. At that time, you will be issued your building permit pursuant to 780 CMR - the Mass. State Building Code." UF ¶ 36; App. Ex. 7. 





 32. The ZBA's decision memorializing its vote to approve this application was issued on March 2, 2018 ("the 2018 Special Permit"), provides that the relief granted was to "[r]elocate and modify a free-standing static billboard to a double-sided digital billboard," and notes that this relief was granted by a unanimous vote of 5-0. UF ¶ 37; App. Ex. 8. 





 33. The 2018 Special Permit, like the 2016 Special Permit, also states that it was issued by the ZBA "[b]y virtue of its authority under M.G.L. Ch. 40A and the Salisbury Zoning Bylaw." UF ¶ 38; [Note 3] App. Ex. 8. 





 34. The 2018 Special Permit, like the 2016 Special Permit, additionally provides that "[a]ppeals of this decision shall be made in accordance with the M.G.L. Ch. 40A, § 17 and shall be filed within twenty (20) days of the date of filing of this decision in the Office of the Salisbury Town Clerk." UF ¶ 38; App. Ex. 8. 





 35. The 2018 Special Permit additionally provides that: 





 By law, this decision shall not take effect until a copy of such notice has been certified by the Town Clerk that; [sic] Twenty (20) days has elapsed since the decision was filed and no appeal has been filed. 





 The Petitioner shall obtain the original certified decision from the office of the Building Inspector and record that document at the Essex Registry of Deeds in Salem MA. The cost of the recording shall be borne by the Petitioner. A registered copy must then be presented to the Building Inspector in order to apply for an appropriate permit. 





 This Decision will lapse if Substantial use of the Petitioned Relief is not made within two (2) years for a Special Permit and one (1) year for a Variance. 





 App. Ex. 8. 





 36. The 2018 Special Permit was filed with the Town Clerk on March 2, 2018. UF ¶ 39; App. Ex. 8. 





 37. On March 23, 2018, the Town Clerk certified that no appeal of the 2018 Special Permit had been filed. UF ¶ 40; App. Ex. 8. 





 38. The 2018 Special Permit was recorded in the Registry on April 4, 2018 at Book 36626, Page 323. UF ¶ 41; App. Ex. 8. 





 39. Following the issuance of the 2018 Special Permit and through August 2019, OMP was engaged in ongoing and diligent actions in furtherance of the 2018 Special Permit, including site work, securing a development agreement for the Project, permitting before the Commonwealth's Office of Outdoor Advertising ("OOA"), and local permitting before the Town's Conservation Commission, all of which were needed to obtain building permits and/or a sign permit to proceed with the construction of the Project. UF ¶ 42. 





The May 2019 Annual Town Meeting 





 40. On May 3, 2019, the warrants for the Town's annual town meeting were posted. App. Ex. 11 (May 13, 2019 Report to the Boards by Neil J. Harrington, Town Manager). 





 41. Warrant Article Eight stated: 





 To see if the Town will vote to amend the [SBL], by inserting the following new definition after the definition of "Electronic Message Boards' [sic] I the list contained in §214-3: 





 ELECTRONIC OUTDOOR ADVERTISING 





 A use whereby an outdoor sign or billboard, whether double-faced, back-to back, or V-shaped, with a screen(s) that is 200 square feet or larger, serves to advertise, direct or call attention to any business, article, substance, or service, or anything that is digitally or electronically projected, on or by a structure of any kind on real property or upon the ground itself, and that advertises services, products or commodities that are not available on said real property or parcel. Electronic Outdoor Advertising is a use to be regulated by the Zoning Bylaw and not the [SBL]. 





 or to take any other action relative thereto. 





 ON PETITION OF THE TOWN MANAGER 





 App. Ex. 10. 





 42. Warrant Article Twelve stated: 





 To see if the Town will vote to amend the Zoning Bylaws of the Town, Chapter 300, by amending the list of definitions contained in Article 1, §300-5 (Definitions) by inserting the text shown in bold and deleting the text shown in strike-through, as shown on the amended List of Definitions, a copy of which is on file with the Town Clerk; or to take any other action relative thereto. 





 ON PETITION OF THE TOWN MANAGER 





 App. Ex. 10. 





 43. In relevant part, the text referenced in Warrant Article Twelve added to the ZBL text defining "Electronic Outdoor Advertising" as follows: 





 A use whereby an outdoor sign or billboard, whether double-faced, back-to-back, or V-shaped, with a screen(s) that is 200 square feet or larger, serves to advertise, direct or call attention to any business, article, substance, or service, or anything that is digitally or electronically projected, on or by a structure of any kind on real property or upon the ground itself, and that advertises services, products or commodities that are not available on said real property or parcel. 





 UF ¶ 45; App. Ex. 9. 





 44. The Town and its respective departments, boards, divisions and personnel did not comply with the notice and hearing requirements set forth in G. L. c. 40A, § 5, with respect to Warrant Article 8. 





 45. Both Warrant Article 8 and Warrant Article 12 ("the 2019 Amendments") were approved by voice vote at the May 20, 2019 Annual Town Meeting. UF ¶ 50. 





 46. During the discuss of Warrant Article 8 at the Annual Town Meeting, the Town Manager made the following statement: 





 I'm sure everyone is aware of the controversy that arose relative to the proposed billboard overlooking the highway that is now currently pending before the State Outdoor Advertising Board [i.e., the Project]. Due to such a large groundswell of opposition, the Board of Selectmen directed the Planning Director and myself to put together a warrant article that would ban these types of billboards in the future, and that's what the intent of this article is. It defines "Electronic Outdoor Advertising" as a use. It's regulated by the Zoning Board, and in each of the various zones of the Town, it's listed whether or not something is allowed as a use, and in this particular case it's not allowed as a use in any zone. And, since we do not have use variances, someone could not appeal a decision to deny a permit for an electronic billboard to the Zoning Board because we have no use variances. The purpose of this article is to prohibit going forward the electronic billboards in Town. 





 App. Ex. 13. 





 47. Warrant Article 8 and Warrant Article 12 were thereafter approved by the office of the Massachusetts Attorney General. UF ¶ 52; App. Ex. 14.





The Applications and the Actions Thereon by the Building Inspector and the ZBA 





 48. The Applications were filed with the Building Inspector on September 25, 2019. UF ¶ 53; App. Ex. 15. 





 49. Between the approval of the 2018 Special Permit in April 2018 and the filing of the Applications in September 2019, OMP engaged in (1) negotiations to acquire from a third party its OOA approval for an electronic billboard, (2) clearing the Project site, and (3) filing a Notice of Intent ("NOI") with the Town's Conservation Commission. App. Ex. 1 (Petition For Relief by Administrative Appeal ("the Petition"), Ex. 9 (November 5, 2019 Statement of Elissa Albertelli-Campbell, President, OMP ("Campbell Statement"))). 





 50. At the time of the May 2019 annual Town meeting, hearings were still in process before the Conservation Commission on OMP's NOI (an Order of Conditions was not issued by the Conservation Commission until August 8, 2019 and did not become final until August 22, 2019), and the transfer of the OOA permit to OMP from the third party had not yet been approved by OOA (the application to the OOA for the transfer of the permit was granted on June 11, 2019). App. Ex. 1 (Ex. 9, Campbell Statement). 





 51. On October 8, 2019, the Building Inspector issued two letters denying the Applications. UF ¶ 55. 





 52. The letter addressed to the SBL Application states: 





 The Permit Application to Erect a Sign dated 9/25/19 is hereby DENIED in accordance with §214-3 of the Salisbury General Bylaws. 





 The proposed Digital Sign meets the Salisbury Sign Bylaw definition of ELECTORNIC OUTDOOR ADVERTISING 'A use whereby an outdoor sign or billboard, whether double-faced, back-to-back, or Vshaped, with a screen(s) that is 200 square feet or larger, serves to advertise, direct or call attention to any business, article, substance, or service, or anything that is digitally or electronically projected, on or by a structure of any kind on real property or upon the ground itself, and that advertises services, products or commodities that are not available on said real property or parcel. Electronic Outdoor Advertising is a use to be regulated by the Zoning Bylaw and not the General Bylaw'. 





 Salisbury Zoning Bylaw §300-27 states that 'It shall be unlawful for any owner or person to erect, construct, reconstruct, or alter a structure or change the use or lot coverage, increase the intensity of use, or extend or displace the use of any building or other structure on a lot without applying for and receiving from the Building Inspector the required building permit therefor'. 





 App. Ex. 16.





 53. The letter addressed to the Building Code Application states: 





 The Application for a Building Permit dated 9/25/2019 for Construct Digital Sign per Plans is hereby DENIED in accordance with §300-27 of the Salisbury Zoning Bylaw; 'It shall be unlawful for any owner or person to erect, construct, reconstruct, or alter a structure or change the use of or [sic] lot coverage, increase the intensity of use, or extend or displace the use of any building or other structure on a lot without applying for and receiving from the Building Inspector the required building permit therefor'. 





 §300-5 defines a Structure as 'A combination of materials assembled for occupancy or use, such as a building, bridge, trestle, tower, framework, retaining wall, tank, tunnel, tent, stadium reviewing stand, platform, shelters, piers, wharves, bin, fence, sign, or the like'. 





 The proposed Digital Sign meets the Salisbury Sign Bylaw definition of Electronic Outdoor Advertising 'A use whereby an outdoor sign, or billboard, whether double-faced, back-to-back, or Vshaped, with a screen(s) that is 200 square feet or larger, serves to advertise, direct or call attention to any business, article, substance, or service, or anything that is digitally or electronically projected, on or by a structure of any kind on real property or upon the ground itself, and that advertises services, products or commodities that are not available on said real property or parcel. Electronic Outdoor Advertising is a use to be regulated by the Zoning Bylaw and not the General Bylaw'. 





 Salisbury Zoning Bylaw §300-27 states that 'It shall be unlawful for any owner or person to erect, construct, reconstruct, or alter a structure or change the use or lot coverage, increase the intensity of use, or extend or displace the use of any building or other structure on a lot without applying for and receiving from the Building Inspector the required building permit therefor'. 





 App. Ex. 17. 





 54. Both letters provide for an appeal within thirty days, in the case of the denial of the SBL Application, in accordance with Chapter 214, § 214-12 of the SBL by filing with the Town Clerk and, in the case of the denial of the Building Code Application, in accordance with Chapter 300 of the ZBL and G. L. c. 40A, § 15 by filing with the Town Clerk. App. Exs. 16, 17. 





 55. On November 5, 2019, within the thirty-day appeal period, OMP filed its Petition pursuant to G. L. c. 40A, §§ 8 and 15. UF ¶ 58. 





 56. By decision dated March 4, 2020, the ZBA denied OMP's Petition by a vote of 3-1 without providing any statement of reasons for the denial. UF ¶ 59; App. Ex. 18.





 Other Freestanding Electronic Billboard Applications 





 57. In addition to this Project, three other sites in the Town have been the subject of applications for freestanding electronic billboards: 100 Elm Street; 75 Main Street and 74 Main Street. See Plaintiff's Supplemental Memorandum In Further Support Of Its Motion For Partial Summary Judgment ("Supp. Mem."), Exs. 2, 3. 





 58. A special permit was granted for the 100 Elm Street site in 2013, on which was proposed a thirty-foot tall freestanding electronic billboard. Supp. Mem. Ex. 2. 





 59. The 100 Elm Street site is located in the Town's commercial district, Supp. Mem. Ex. 2., which has a thirty-five foot height limitation according to the ZBL's Dimension Control Table. App. Ex. 2. 





 60. A special permit was granted for the 75 Main Street site in 2014, on which was proposed an eighty-nine foot freestanding electronic billboard. Supp. Mem. Ex. 3. 





 61. The 75 Main Street site is located in the Town's commercial district. Supp. Mem. Ex. 3. 





 62. At the same time, a special permit for the 74 Main Street site on which was proposed a fifty-five foot freestanding electronic billboard was denied. Supp. Mem. Ex. 3. 





 63. The 74 Main Street site was located in the Town's commercial district. Supp. Mem. Ex. 3. 





 64. The actions regarding 75 Main Street and 74 Main Street were the subject of litigation, resulting in the Appeals Court's decision in Clear Channel Outdoor, Inc. v. Zoning Bd. of Appeals of Salisbury, 94 Mass. App. Ct. 594 (2018) annulling the ZBA's actions with respect to both applications and returning both matters to the ZBA for further consideration. 





 65. According to OMP's president, the holder of the OOA permit for 75 Main Street agreed to transfer its permit to OMP on January 15, 2019, within a month of the Appeals Court's Clear Channel decision, App. Ex. 1 (Ex. 9, Campbell Statement at ¶ 9), and the transfer was approved by OOA on June 11, 2019. App. Ex. 1 (Ex. 9, Campbell Statement ¶ 12). 





 66. The 74 Main Street application, having been returned to the ZBA for further consideration, was then denied by a unanimous vote of 5-0 "because of the effect on the surrounding community and negative property values." Supp. Mem. Ex. 3. 





 67. Counsel for the parties agreed at the February 10, 2021 hearing on this matter that no building permit had been sought for either the 75 Main Street or the 74 Main Street project.





STANDARD OF REVIEW 





 Generally, summary judgment may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission ... together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c). In viewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). In addition, "[p]ursuant to rule 56 (c), 'summary judgment, when appropriate, may be rendered against the moving party.' See, e.g., Perseus of N.E., MA, Inc. v. Commonwealth, 429 Mass. 163 , 168, 706 N.E.2d 681 (1999)." Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen., 443 Mass. 837 , 851 (2005). 





DISCUSSION 





 In its Motion, OMP seeks partial judgment in its favor on Count II, brought pursuant to G.L. c. 240, § 14A, and Count III, brought pursuant to G. L. c. 231A, § 8, declaring the following: (1) that the SBL, being for all intents a zoning regulation that was not passed in conformance with G. L. c. 40A, is invalid; (2) that the definition of "Electronic Outdoor Advertising" inserted in the SBL at the May 2019 annual town meeting is also invalid for the same reason; (3) that the definition of "Electronic Outdoor Advertising" inserted in the SBL at the May 2019 annual town meeting is further invalid because, by its express terms, it provides that "Electronic Outdoor Advertising is a use to be regulated . . . not [by] the [SBL];" and (4) that, even if the SBL is not invalidated, the 2018 Special Permit was in full force and effect and authorized the issuance of all building permits or sign permits for the Project. Motion at 3. As the municipal defendants point out, G. L. c. 240, § 14A provides that "[t]he owner of a freehold estate in possession in land" may bring a petition in the land court, and OMP is not the owner of 106 Rabbit Road, but a lessee. App. Ex. 1 (Ex. 3, Notice Of Lease). [Note 4] Accordingly, relief under that statute is not available to OMP here and its requests will be considered solely under G. L. c. 231A. 





 Sorting through what can best be described as a mash-up of zoning and general bylaw provisions in the Town makes settling on an analytical framework for this case more than a little difficult. By way of example, the ZBL has, since its inception, included signs as structures and currently contains provisions regulating some signs. [Note 5] The SBL, adopted in 1996, incorporates definitions from the ZBL insofar as they are not defined in the SBL, makes the Building Inspector the administrator of the SBL, and provides for appeals to the ZBA by any person aggrieved by his inability to obtain a sign permit. App. Ex. 4. The hearings for both the 2016 Special Permit and the 2018 Special Permit were introduced by the Chair of the ZBA as petitions "with respect to the Salisbury Zoning Bylaw, Section 300" and G. L. c. 40A. App. Exs. 5, 7. The decisions issued on both the 2016 Special Permit and the 2018 Special Permit stated that they were issued by the ZBA "[b]y virtue of its authority under M.G.L. Ch. 40A and the Salisbury Zoning Bylaw," and stated that "[a]ppeals of this decision shall be made in accordance with the M.G.L. Ch. 40A, § 17." App. Exs. 6, 8. Matters were not helped by the 2019 Amendments, where, under the amended SBL, electronic outdoor advertising signs were defined as "a use to be regulated by the [ZBL] and not the [SBL]," and the ZBL was amended to define electronic outdoor advertising signs as a "use," even though neither those nor any other signs appear in the ZBL's Table Of Use Regulations. App. Ex. 2. 





 Turning first to OMP's argument that, regardless of the applicability of the SBL and its amendment to the Project, the 2018 Special Permit was in full force and effect and authorized the issuance of all building permits or sign permits for the Project, this court disagrees. The decision in Albahari v. Zoning Bd. of Appeals, 76 Mass. App. Ct. 245 (2010) ("Albahari II"), is dispositive on the effect of the bylaw amendments on the Applications, standing alone. There, the defendant Lucille Owocki ("Ms. Owocki"), the owner of two contiguous parcels of land in Brewster, applied for a permit to build a single-family home thereon. The town building commissioner denied the application but, following litigation, ultimately issued the permit on September 22, 2005. Id. By then, however, the town zoning bylaw had been amended in a way that made it impossible for Ms. Owocki to build in accordance with her plans (the issue was whether Ms. Owocki's property was in a wetlands conservancy district based on soil type, and the bylaw was amended to add a soil type as a conservancy soil, similar if not identical to that already listed in the bylaw, that existed on Ms. Owocki's property). 





 In the prior litigation, Albahari v. Board of Appeals of Brewster, 2004 Mass. App. Lexis 516, 61 Mass. App. Ct. 1104 (2004) (Rule 23.0 Decision), the Appeals Court affirmed the decision of the trial court that the bylaw in effect at the time of the zoning board of appeal's decision was controlling, but declined to decide which version of the bylaw would apply to the actual issuance of the permit. 76 Mass. App. Ct. at 247. Back before the municipal officials, the building commissioner granted Ms. Owocki a building permit and, on an appeal by the neighbors, the local board upheld him, finding that deficiencies in Ms. Owocki's application were either rectified before the first publication of the notice of the proposed bylaw change, or were routine, ministerial details that were easily corrected, such that the prior bylaw applied to her application. Id. at 247-248. On appeal, a judge of this court reversed, finding that the remaining deficiencies in Ms. Owocki's application were more than routine, such that the amended bylaw applied. 





 On further appeal to the Appeals Court, that court stated that: 





 [t]he permit in this case did not actually issue before the first publication of notice of a hearing on the proposed by-law change. Were that all there were to it, Owocki would not be entitled to the permit she now seeks, for she acquired no rights simply by filing the permit application. 





Id. at 249 (citations omitted). However, quoting its earlier opinion, the Albahari II court described the issue now before it as "whether the permit in question should be deemed to have been 'issued' for the purpose of G. L. c. 40A, § 6 ... or whether the circumstances are such as to have created in defendant Owocki a 'vested' right to the permit." Id. The court then turned to Framingham Clinic, Inc. v. Zoning Bd. of Appeals of Framingham, 382 Mass. 283 , 297 (1981) for the proposition that "[t]he burden is on the applicant to demonstrate in the Superior Court an entitlement to a building permit. ... Upon such a showing, the issuance of a permit is a matter of duty, not discretion, and relief in the form of an order that a permit issue is appropriate." According to the Albahari II court, 





 [a]lthough the Framingham Clinic case did not involve a by-law change, the case is relevant because it stands for the proposition that the right to a permit vests at the time the applicant is unconditionally entitled to its issuance. Until that time, ...the applicant is subject to any changes in zoning provisions that are properly noticed before the permit issues. 





76 Mass. App. Ct. at 250-251.





 In applying its analysis to the case before it, the Albahari II court stated: 





 The question, then, is not whether Owocki's permit issued before publication of the first notice of a hearing on the proposed by-law, but whether Owocki was unconditionally entitled to a permit at any time before the first notice, for if she was, then issuance became a duty and created rights she could enforce. 





Id. at 251. According to the court, "[o]n this record, we think the answer to that dispositive question is 'no,' even if the notion of 'unconditional entitlement' ignores failure to obtain the ministerial stamps, seals and approvals that a permit applicant may have for the asking." Id. The court reached that conclusion because the building commissioner's denial of the application in 2000 was based in part on inadequate foundation plans that, while amenable to correction "readily and quickly," were not filed until 2005, long after the first publication of notice of the proposed zoning change, and were subject to review by the building commissioner to insure that the deficiencies were corrected, a review that was not of a routine, discretionary character. Id. at 251-252. "Until those plans were filed, Owocki had no unconditional right to a permit and, therefore, had no vested right in a permit conforming to the preamendment zoning requirements. Consequently, her application was subject to the requirements of the amended zoning by-law." Id. at 252. The Albahari II court affirmed this court's judgment annulling the local board's decision. 





 OMP in this case has even less of a claim to a building permit than Ms. Owocki in Albahari II. Unlike Ms. Owocki, OMP did not even file its application for a building permit until September 25, 2019, months after the 2019 Amendments were adopted, apparently because OMP required the OOA permit from the Commonwealth and the Order of Conditions from the Town's Conservation Commission before doing so. OMP not having a vested right to a building permit when the 2019 Amendments were enacted, the Applications are subject to those amendments, unless the prior grant of the 2018 Special Permit changes that result. This court is of the view that it does not. And, while OMP argues that the SBL and its amendment are invalid, this court is of the further view that the same result obtains whether the 2018 Special Permit is treated as issued under the SBL or the ZBL (and, if not void, it has to have been issued under one or the other), so it need not reach the issue of the SBL's validity. 





 As the municipal defendants argue, relying on Spenlinhauer v. Town of Barnstable, 80 Mass. App. Ct. 134 , 137-138 (2011), "changes in zoning ordinances protect some prior existing uses, see G. L. c. 40A, § 6, but general ordinances typically do not." So, assuming the SBL is valid and the 2018 Special Permit validly issued thereunder, it would not be protected from the subsequently enacted 2019 Amendments. Alternatively, if the SBL is invalid, [Note 6] then it follows that the 2018 Special Permit issued pursuant to it is a nullity, doubtless not the result sought by OMP here, or that the 2018 Special Permit, while valid, is only protected from zoning amendments for twelve months pursuant to G. L. c. 40A, § 6. Regarding the latter option, § 6 provides in pertinent part: 





 A zoning ordinance or by-law shall provide that construction or operations under a building or special permit shall conform to any subsequent amendment of the ordinance or by-law unless the use or construction is commenced within a period of not more than 12 months after the issuance of the permit and in cases involving construction, unless such construction is continued through to completion as continuously and expeditiously as is reasonable. 





This zoning freeze, which "is an issue separate and distinct from the construction necessary to prevent a permit from 'lapsing'" under G. L. c. 40A, § 9, Martin R. Healy, et al., Massachusetts Zoning Manual, § 7.2.2(b) (MCLE, Inc. 6th ed. 2017, Supp. 2019), requires that "[w]ork or operations authorized under a building permit or special permit must be commenced within a period of not more than twelve months in order to be within the protection of the statute." Id. Furthermore, preliminary site work, such as demolition and debris removal preparatory to construction, are not sufficient to constitute "construction" under the statute. See Alexander v. Building Inspector of Provincetown, 350 Mass. 370 , 374-375 (1966) ("preparation for new construction by removal of standing buildings and leveling of consequent debris" would not support a finding that construction had lawfully begun) (as applied to predecessor to G. L. c. 40A, § 6); Murphy v. Board of Selectmen, 1 Mass. App. Ct. 407 , 409 (1973) ("site preparation activity would not qualify as construction as that word is used in § 11") (as applied to predecessor to G. L. c. 40A, § 6). 





 Here, the ZBA's decision granting the 2018 Special Permit was dated March 1, 2018, filed with the Town Clerk on March 2, 2018, and recorded at the Registry on April 4, 2018. App. Ex. 8. The Applications were filed with the Building Inspector on September 25, 2019, some seventeen months later. At that point, work at 106 Rabbit Road consisted of "excavation, removal of overburden, material hauling, and leveling the pad area for the proposed Sign," which was accomplished in January 2019. App. Ex. 1 (Ex. 9, Campbell Statement ¶ 12). While OMP appears to have been diligently pursuing the other permits required for the Project, it did not commence use or construction within twelve months of the issuance of the 2018 Special Permit. As a result, the 2018 Special Permit is subject to the 2019 ZBL amendment. 





 While OMP sought only a partial summary judgment on the issues addressed above, this decision has broader ramifications for OMP's building permit application. Under other circumstances, the court would be inclined to remand this matter in order to allow the ZBA to reconsider the building inspector's denial of the Applications and, this time, to provide a rationale for its decision, whatever it might be. It is clear, though, that if, as the court has determined, the 2018 Special Permit is subject to the 2019 ZBL amendment, then the ZBA has no option but to uphold the building inspector's decision to deny the Building Code Application based on the fact that the ZBL does not permit electronic outdoor advertising as a use and does not allow for use variances. [Note 7] See G. L. c. 40A, § 10 ("Except where local ordinances or by-laws shall expressly permit variances for use, no variance may authorize a use or activity not otherwise permitted in the district in which the land or structure is located"). 





CONCLUSION 





 For the reasons set forth above, Plaintiff's Motion For Partial Summary Judgment is DENIED. Instead, judgment will enter pursuant to Mass. R. Civ. P. 56 (c) on Count I upholding the decision of the ZBA to affirm the Building Inspector's denial of the Building Code Application, and on Count III declaring (1) that OMP was not entitled to the issuance of a building permit, its right to such a permit not having vested at the time of the bylaw amendments at issue here and (2) that, whether considered under the SBL or the ZBL, the Applications were subject to the 2019 Amendments. 





 SO ORDERED 





FOOTNOTES
[Note 1] These are set forth in numbered paragraphs in OMP's Motion, Sec. II Undisputed Facts, and admitted by the municipal defendants in Defendants' Responses To Plaintiff's Statement Of Undisputed Material Facts ("Response") docketed on August 28, 2020. 

[Note 2] The municipal defendants disputed this statement in their Response because the copy of the ZBL contained in the Appendix as Ex. 2 is not certified as the version of the ZBL in effect prior to May 2019. However, at the hearing on October 6, 2020, counsel for the defendants agreed that Ex. 2 could be relied on as accurately reflecting the ZBL as amended on various dates stated therein, including prior to May 2019. 

[Note 3] In the Response, due to a clerical error, paragraph 38 of the UF is renumbered as paragraph 39, and the numbering of all subsequent paragraphs in the Response is adjusted accordingly. 

[Note 4] The court notes that the Notice Of Lease appears to contain an incorrect deed reference. The deed in to 109 Rabbit Road's current owner, KLS Management Group, LLC ("KLS"), is dated May 25, 2016 and recorded in the Registry at Book 34950, Page 304. The Notice Of Lease references a deed in to KLS dated January 20, 2011 recorded in the Registry at Book 30495, Page 332. 

[Note 5] See App. Ex. 2, § 300-96(H) (imposing regulations in addition to those set forth in the SBL regarding signs for "adult use"); § 300-125(E) (imposing regulations in addition to those set forth in the SBL regarding signs for wireless communication facilities); § 300-141.7(C) (imposing regulations in addition to those set forth in the SBL regarding signs for wind energy facilities). 

[Note 6] There is much to commend this argument, considering the purpose and effect of the SBL, the procedural mechanisms adopted by it, and the practice of local officials, at least in this case, to treat an appeal from the building inspector's denial of a sign permit as an appeal pursuant to the ZBL and G. L. c. 40A. See Rayco Inv. Corp. v. Selectmen of Raynham, 368 Mass. 385 , 386-387 (1975) (where town had previously regulated trailer parks through its zoning bylaw, general ordinance regulating the number of trailer park licenses in the town not adopted in compliance with G. L. c. 40A was invalid); Spenlinhauer, supra (invalidating "Comprehensive Occupancy" general ordinance not adopted in compliance with G. L. c. 40A insofar as it purported to regulate off-street parking where the town's zoning bylaw contained a section devoted to "Off street Parking Regulations" and where the town had historically regulated street parking through its zoning bylaw, not its general ordinances). Given the decision here, however, the court need not reach the issue. 

[Note 7] As argued by the municipal defendants, the Project also violates the height limit in its zoning district and, on that additional ground, the ZBL Application would be denied in the absence of a variance. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.